UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DENARD ROBINSON; BRAYLON EDWARDS; MICHAEL MARTIN; SHAWN CRABLE, Individually and on behalf of themselves and former University of Michigan football players similarly situated, | Case No.: 24-12355 <br> Honorable Terrence G. Berg |
| Plaintiffs, | |
| v. | |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION aka "NCAA"; BIG TEN CONFERENCE aka "Big Ten"; BIG TEN NETWORK aka "BTN" | |
| Defendants. | |

_____/

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVES

Plaintiffs, by and through their attorneys, move for class certification pursuant to Fed. R. Civ. P. 23(a)(1)-(4) and (b)(3) on behalf of themselves and all others similarly situated and for the appointment of counsel and class representative pursuant to Fed. R. Civ. P 23(g), and hereby move this Court to enter an Order to:

1.    Certify a plaintiff class pursuant to Fed. R. Civ. P 23(a) and 23(b)(3) defined as follows:

All persons who were NCAA student-athletes prior to June 15, 2016, whose images or likeness has been used in any video posted by or licensed by the NCAA, Big Ten Network, or their agents, distributors, contractors, licensees, subsidiaries, affiliates, partners, or anyone acting in concert with any of the foregoing entities or persons.

2.      Appoint James R. Acho, Ethan Vinson, and Kevin J. Campbell of the law firm Cummings, McClorey, Davis & Acho, PLC pursuant to Fed. R. Civ. P. 23(g); and

3.      Appoint Denard Robinson, Braylon Edwards, Michael Martin, and Shawn Crable as class representatives.

4.      Concurrence has been sought through ongoing communication with defense counsels, who do not concur, and in fact have indicated they will be filing motions to dismiss or in the alternative transfer venue. Those motions will be opposed by these Plaintiffs. The filing of this motion should render those forthcoming motions *perditio tempus*.

4.      Plaintiffs estimate here that each Class contains thousands of members, and therefore, is so numerous that joinder of all members would be impracticable. In fact, as of the date of the filing of the instant Motion, Plaintiffs' counsel has over 270 former student athletes who have joined this action.

5.      Plaintiffs rely on this Motion, the Brief in Support, and the accompanying exhibits.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant this Motion and certify a plaintiff class pursuant to Fed. R. Civ. P 23(a) and 23(b)(3), appoint Plaintiffs' counsel of choice, James R. Acho, Ethan Vinson, and Kevin J. Campbell of the law firm Cummings, McClorey, Davis & Acho, PLC as class counsel pursuant to Fed. R. Civ. P. 23(g); and appoint Denard Robinson, Braylon Edwards, Michael Martin, and Shawn Crable as class representatives, and order any other relief the Court deems appropriate.

Respectfully submitted:
CUMMINGS, MCCLOREY, DAVIS & ACHO

/s/James R. Acho
JAMES R. ACHO (P62175)
ETHAN VINSON (P26608)
KEVIN J. CAMPBELL (P66367)
**Attorneys for Plaintiffs**
17463 College Parkway, 3rd Floor
Livonia, Michigan 48152
Dated:  December 12, 2024          (734) 261-2400 / (734) 261-4510

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DENARD ROBINSON; BRAYLON
EDWARDS; MICHAEL MARTIN; SHAWN
CRABLE, Individually and on behalf of
themselves and former University of
Michigan football players similarly situated,

     Plaintiffs,

v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION aka "NCAA"; BIG TEN
CONFERENCE aka "Big Ten"; BIG TEN
NETWORK aka "BTN"

     Defendants.

Case No.:  24-12355
Honorable Terrence G. Berg

_____/

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVES

{02185853-1}

## STATEMENT OF ISSUES PRESENTED

1.    Should this action be certified as a class action pursuant to Fed. R. Civ. P. 23(a)(1)-(4) and 23(b)(3) where the requirements of numerosity, commonality, typicality and adequacy of representation are satisfied; a common question of law and fact predominates, and a class action is superior for the fair adjudication of the controversy?

2.    Should the Court appoint Plaintiff's Counsel James R. Acho, Ethan Vinson, and Kevin J. Campbell as Co-Lead Class Counsel where such counsel has extensive complex class action and subject matter experience and will fairly and adequately represent the interests of the Class?

3.    Should the Court appoint Plaintiffs Denard Robinson, Braylon Edwards, Michael Martin, and Shawn Crable as class representatives where Plaintiff's claims are substantially identical to those of the class?

**Plaintiffs Answer:**
Yes

## **TABLE OF CONTENTS**

1. Table of Authorities.....................................................................v

2. Preface ............................................................................... vii

3. Introduction..........................................................................1

4. Background and Facts.............................................................2

5. Proposed Classes ..................................................................6

6. Argument .............................................................................7

     o   Standards for Class Certification..........................................7

     o   The Elements of Fed. R. Civ. P. 23(a) Are Satisfied ...........8

          ▪   The Class Members Are Sufficiently Numerous.......................8

          ▪   Common Questions of Law and Fact Exist ...............................9

          ▪   The Class Representatives' Claims Are Typical .....................12

          ▪   The Proposed Class Representatives and Their Counsel Will Adequately Represent the Classes .............................................17

     o   Plaintiffs Satisfy The Requirements of Fed. R. Civ. P. 23(b) ...........20

          ▪   The Damages Class Satisfies the Requirements of Fed. R. Civ. P. 23(b)(3) ................................................................21

               ▪   Common Issues of Fact and Law Predominate.............22

               ▪   A Class Action Is a Superior Method of Adjudicating This Dispute...................................................................23

7. The Court Should Appoint James R. Acho, Ethan Vinson, and Kevin J. Campbell as Co-Lead Class Counsel ...........................................26

- o Professional Experience in This Type of Litigation, and Willingness and Ability to Commit to a Time-Consuming Process ..................... 27

- o Ability to Work Cooperatively With Others ...................................... 30

- o Access to Sufficient Resources to Advance the Litigation in a Timely Manner .................................................................................. 30

- o Substantial Work Already Done to Identify and Investigate Plaintiffs' Claims .................................................................................. 31

8. Conclusion ...................................................................................... 31

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ....................................22, 23

*Arkona, LLC v. Cty. Of Cheboygan*, No. 1:19-cv-12372, 2020 WL 4366027 (E.D. Mich. July 30, 2020) ........................................................................................12

*Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434
(E.D. Mich. 2015) ............................................................ 11, 15, 16, 17, 18, 24, 26

*Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565 (6th Cir. 2004) ...........................8

*Bobbitt v. Acad. Of Court Reporting, Inc.*, 252 F.R.D. 327 (E.D. Mich. 2008) .....25

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ...........................24

*Davidson v. Henkel Corp.*, 302 F.R.D. 427 (E.D. Mich. 2014) .............................16

*Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006) ........................................18

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998) .......................11

*Hicks v. State Farm Fire and Casualty Company*, 965 F.3d 453 (6th Cir. 2020) ....9

*In re Municipal Derivatives Antitrust Litig.*, 252 F.R.D. 184 (S.D.N.Y. 2008) .....31

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Antitrust Litig.* ("Alston"), 311 F.R.D. 532 (N.D. Cal. 2015) ........................................................21

*In re Northwest Airlines Corp.*, 208 F.R.D. 174 (E.D. Mich. 2002) ...............11, 16

*In re Packaged Ice Antitrust Litigation*, 322 F.R.D. 276 (E.D. Mich. 2017) ..........9

*In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013) ..............26

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013) ...................................................................................................9, 24

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ..........................................25

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015) ..............................25

*Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69 (2021) .................................5

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ............................................6

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ................................................21

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) ................................16

*Thompson v. Bd. Of Educ. Of Romeo Cmty. Sch.*, 709 F.2d 1200
 (6th Cir. 1983). .......................................................................................................26

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ....................................22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...........................................10

*Weeks v. Bareco Oil Co.*, 125 F.2d 84 (7th Cir. 1941) ...........................................26

## FEDERAL STATUTES

**Sherman Act § 1** ............................................................................................11, 16

## FEDERAL RULES

**Federal Rule of Civil Procedure 23** ........................... 6, 7, 8, 9, 12, 15, 17, 20, 21,
23, 26, 27, 31, 32

# PREFACE

While it is admittedly early to move for class certification in a proposed class action like the instant case, it is in fact proper to move for certification in this case at this juncture.   This Honorable Court should note that more than 300 former University of Michigan football players have already signed up as class members[1]. The named Plaintiffs and class representatives, Braylon Edwards, Denard Robinson, and Michael Martin, all reside in the Eastern District of Michigan, as do many of the proposed class. For the convenience of all Plaintiffs and witnesses, as well as the myriad reasons set forth herein, the proposed class here should be certified immediately and this case should remain before the Hon. Judge Berg, here in the Eastern District of Michigan.

---

[1] Plaintiffs' counsel anticipated wide interest from potential class members, and as a result, a class notice letter went out to all former University of Michigan football players through the Michigan Football Alumni Network, known as F.A.M. in early October 2024.  As a result, more than 300 former players have now signed up as putative class members.

## I.   INTRODUCTION

The University of Michigan Football program is arguably the most iconic in college football history. It is undoubtedly the most recognized brand nationally. Storied teams, legendary players, and some of the most historic moments in the sport's history were created by the Michigan Program and its players This Class Action is being brought on behalf of many of those players, namely all former University of Michigan Football players who played prior to 2016. This case concerns a matter of great public significance and seeks to remedy a serious wrong.

While today, it is accepted and understood that current college football players are allowed to be compensated monetarily, especially for using their name, image, and likeness (sometimes referred to as "NIL"), players were wrongfully and unlawfully prevented from doing so for decades. The NCAA knew it was wrong but still continued to profit. When Brian Bosworth famously wore a shirt in the 1980s on the sideline of the National Championship game, with the shirt saying "NCAA" stands for "National Communists Against Athletes," it drew guffaws from older fans, but players nodded in agreement; they knew thirty-five (35) years ago that preventing them from capitalizing in the most valuable thing they have – their name, image, and likeness was wrong.  Not just wrong, but unlawful. This action seeks to compensate former Michigan players and rectify that unlawful wrong.

## II.   BACKGROUND AND FACTS

Former University of Michigan student-athletes Denard Robinson, Michael Martin, Braylon Edwards, and Shawn Crable have made significant contributions to University of Michigan football, with their game-winning plays and electrifying performances, and they are frequently featured in highlight reels and promotional content. (Doc. No., 1, Complaint, ¶ 14, PageID.10). These moments continue to attract viewers and boost merchandise sales as the NCAA capitalizes on the compelling stories and magical performances of these Michigan legends. *Id.* The team's successes led by other Michigan greats like Tom Harmon, Anthony Carter, Tom Brady, Charles Woodson, Desmond Howard, and many more further highlight the program's storied tradition, showcasing national championships, Heisman trophies, and legendary victories that reinforce the powerful legacy left by these athletes and their teams, who have all left an indelible mark on the program. *Id.*

Michigan football history is replete with monumental games and iconic plays that have not only defined the sport, but also driven the NCAA's commercial success. (Doc. No. 1, Complaint, ¶16, PageID.11). The NCAA has extensively monetized these moments, replaying them across various platforms, selling related merchandise, and promoting them in advertisements. Yet, the athletes themselves have not received compensation for the use of their names, images, and likenesses.

This practice of exploiting not just individual players, but the historic and emotionally charged rivalries, which form the bedrock of college football's appeal, underscores the systematic inequity inherent in the NCAA's policies. (Doc. No., 1, Complaint, ¶ 17, PageID.11). The Defendants, including the NCAA, Big Ten Conference (Big Ten), Big Ten Network (BTN), and its agents and subsidiaries, have systematically exploited these iconic moments that these Class Members have created without compensating the student-athletes who created them. (Doc. No., 1, Complaint, ¶ 18, PageID.12). These organizations have monetized the athletic feats of Martin, Robinson, Edwards, Crable, and countless other University of Michigan football players by broadcasting, advertising, and selling merchandise featuring their performances, all without their consent or any form of remuneration. Defendants have used the images and videos of Plaintiffs and similarly situated Class Members to advertise for their commercial purposes without the athletes' consent and while paying them nothing. *Id.*

The NCAA football season, heavily promoted through the use of these highlights and key moments, generates billions of dollars annually. (Doc. No., 1, Complaint, ¶ 19, PageID.12). Yet the student-athletes whose blood, sweat, and tears drive this revenue see none of it. *Id.* For example, NCAA.com and affiliated websites host numerous videos showcasing these former players. *Id.* Robinson's electrifying "Shoelace" moments, Martin's defensive dominance and his iconic celebration after

a triple-overtime victory - broadcast repeatedly across the country by BTN and other networks - Edwards' spectacular catches, and Crable's game-changing defensive plays, including the unforgettable hit on Ohio State's Troy Smith that has been replayed thousands of times. *Id.*, at pp. 12-13. These moments and countless highlights from other former University of Michigan football players continue to draw millions of views, generating substantial advertising revenue for media platforms. *Id.*, at p. 13. Yet, despite their pivotal role in creating this revenue, these athletes have received none of the financial benefits from their contributions. *Id.*

The NCAA generates billions of dollars annually, with a substantial portion derived from media contracts, such as its partnership with the Big Ten and BTN. (Doc. No., 1, Complaint, ¶ 20, PageID.13). Big Ten, through BTN alone, generates hundreds of millions of dollars from broadcasting rights, advertising, and subscription fees, particularly from high-profile games involving Michigan football. *Id.* BTN has broadcasted current and Class Michigan Football games since 2006. *Id.* The Michigan-Ohio State rivalry, one of the highest-grossing annual events, attracts millions of viewers and secures lucrative advertising deals. *Id.* Despite this overwhelming financial success, none of the student-athletes whose performances are central to this revenue receive any compensation. *Id.* This stark economic imbalance underscores the NCAA's, the Big Ten's, and BTN's systematic

exploitation of student-athletes, who are denied the financial benefits that their contributions create. *Id.*

NCAA rules require student-athletes to sign forms that effectively transfer their publicity rights to the NCAA. (Doc. No., 1, Complaint, ¶ 21, PageID.13). These forms, presented as a non-negotiable condition of participation, strip student-athletes of their ability to control the use of their names, images, and likenesses. *Id.*, at pp. 13-14. This practice ensures that the NCAA and its partners can exploit these rights indefinitely, without ever compensating the student-athletes whose talents and hard work generate substantial revenue. *Id.*, at p. 14. The United States Supreme Court, in *Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, 90 (2021), noted that the NCAA "enjoy[s] monopsony [(i.e., buyer-side monopoly)] power in the market for student-athlete services, such that its restraints can (and in fact do) harm competition." The NCAA admitted as much in its briefing for *Alston*.

The named Plaintiffs, represent a broader Class of former NCAA student-athletes who have been similarly exploited. These athletes, who committed themselves to their sports and their education, have been denied the opportunity to benefit financially from their own identities. The NCAA has conspired with conferences, colleges, licensing companies, and apparel companies to fix the price of student-athlete labor near zero and make student-athletes unwitting and uncompensated lifetime pitchmen for the NCAA.

The Plaintiffs' claims are grounded in well-established legal principles, including the right to publicity, which protects individuals from unauthorized commercial use of their identities. The NCAA's, the Big Ten's, and BTN's unauthorized use of the Plaintiffs' names, images, and likenesses violates this right and constitutes unjust enrichment at the expense of the student-athletes. This conduct constitutes unreasonable restraint of trade, illegal monopolization, tortious misappropriation of publicity rights, and unjust enrichment.

### III.   PROPOSED CLASSES

Class actions are an essential tool for adjudicating cases involving multiple claims that involve similar factual or legal inquiries and that may be too modest to warrant prosecuting individually.  Class actions give voice to plaintiffs who "would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

Plaintiffs seek certification under Fed. R. Civ. P. 23(a) and 23 (b)(2) to pursue injunctive relief on behalf of the Injunctive Relief Class. The plaintiff also seeks certification under Fed. R. Civ. P. 23(a) and 23 (b)(3) to pursue damages resulting from Defendants' unlawful restraints on behalf of the Damages Class. As explained below, Plaintiff respectfully requests that the Court certify each of the proposed classes under Rules 23 (a) and (b). The plaintiffs' motion for class certification is further supported by the expert affidavit of Joshua Freedman, a recognized authority

in NIL rights, sports marketing, and athlete representation. The affidavit demonstrates how the proposed class meets the requirements of Federal Rule of Civil Procedure 23 by addressing numerosity, commonality, typicality, and adequacy. It highlights the shared legal and factual issues affecting class members, the impracticality of individual litigation, and the consistent methodologies for calculating damages. This affidavit is submitted as **Exhibit A** to support certification of the class and its subclasses.

### IV.   ARGUMENT

### A. Standards for Class Certification

To certify a class, Plaintiffs must establish each element of Rule 23(a) and at least one of the subsections of Rule 23(b). Rule 23(a) provides that class certification is appropriate if: "(1) the class is so numerous that the joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class." *Id.*

As for Rule 23(b), Plaintiff here seek certification of the Injunctive Relief Class pursuant to Fed. R. Civ. P. 23(b)(2) and the Damages Class pursuant to Fed. R. Civ. P. 23(b)(3). Rule 23(b)(2)'s requirements are met where "the party opposing the class has acted or refused to act on grounds generally applicable to the class,

thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole". Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) permits class certification where common questions of law and fact "predominate over any questions affecting only individual members" and class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Classes satisfy all of these requirements.

**B. The Elements of Fed. R. Civ. P. 23(a) Are Satisfied.**

**1. The Class Members Are Sufficiently Numerous.**

Rule 23(a)(1) requires that the class is so numerous that joinder of all members is impracticable. Numerosity does not require any specific number of members, *Senter v. Gen Motors Corp.,* 532 F.2d 511, 522-23 (6th Cir. 1976), and "imposes no absolute limitations." *Crawford v. TRW Auto. U.S. LLC*, 2007 WL 851627, at *2 (E.D. Mich. 2007). Although the number could be few, e.g., *Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (class of 35 employees), the "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy numerosity." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004).

Plaintiffs estimate here that each Class contains thousands of members, and therefore, is so numerous that joinder of all members would be impracticable. (Doc.

No. 1 Complaint, ¶ 83, PageID.36). In fact, to date, Plaintiffs' counsel has over 270 former student athletes who have joined this action.

### 2. Common Questions of Law and Fact Exist.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class" and a showing "that class members have suffered from the same injury." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.,* 722 F.3d 838, 852 (6th Cir. 2013). To satisfy commonality, Plaintiffs' "claims must depend on a common contention … of such a nature that is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one strike." *Hicks v. State Farm Fire and Casualty Company*, 965 F.3d 453, 458 (6th Cir. 2020), quoting *Young v. Nationwide Mut. Ins. Co*., 683 F.3d 532, 542 (6th Cir. 2012).   The party seeking certification has "the burden to prove that the class certification prerequisites are met[.]"  *In re Whirlpool Corp.* 722 F.3d at 851.

"The requirement of commonality requires only a common question of law or fact." *In re Packaged Ice Antitrust Litigation*, 322 F.R.D. 276, 285 (E.D. Mich. 2017, quoting *UAW v. Ford Motor Company*, No. 06-cv-10311, 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006), citing *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). To establish commonality, Plaintiffs must demonstrate that their claims "depend on a common contention of … such a nature that it is capable of

class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012), quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S.Ct. 2541, 2551 n. 5, 180 L.Ed.2d 374 (2011).

Here, Plaintiffs have identified several significant questions of law and fact that are common to all members of the proposed Classes, including whether Plaintiffs can establish a horizontal agreement that causes significant anticompetitive effects in relevant markets, whether NCAA rules have harmed competition, and whether Plaintiffs and the Class is entitled to declaratory and injunctive relief,. And whether Plaintiffs and the Class are entitled to damages. The common questions of fact and law are:

    a. Whether Defendants engaged in a contract, combination, and conspiracy, consisting of horizontal and vertical agreements that artificially depress prices in the market for student-athletes' labor, fixing those prices near zero;

    b. Whether such contract, combination, and conspiracy, consisting of horizontal and vertical agreements, is enforceable;

    c. Whether Defendants illegally agreed to exploit student-athletes by using their monopoly power to force student-athletes to give up their legal right of publicity and control of their name, image, and likeness; asserting a perpetual license of student-athletes' NIL rights; and appropriating those rights for decades, long after the athletes have completed their collegiate careers;

    d.  Whether such conduct caused the Class to receive less, or near zero compensation, than they would have for the use of their publicity rights, including name, image, and likeness in a competitive market;

    e.  Whether Defendants violated Section I of the Sherman Act;

    f.  Whether the Defendants and their co-conspirators' conduct caused injury to Plaintiffs and the Class;

    g.  Whether the Plaintiffs and Class are entitled to declaratory and injunctive relief;

    h.  Whether and to what extent Plaintiffs and the Class are entitled to damages;

    i.  Whether Defendants have been unjustly enriched.

Importantly, the "interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Fallick v. Nationwide Mut. Ins. Co*., 162 F.3d 410, 424 (6th Cir. 1998). "For example, where the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to al of the persons affected. *Avio, Inc. V. Alfoccino, Inc.*, 311 F.R.D. 434, 444 (E.D. Mich. 2015) quoting *In re Northwest Airlines Corp.,* 208 F.R.D. 174, 217 E.D. Mich. 2002).

All of these common questions Plaintiffs have identified revolve around the central issues of the existence and competitive effect of the alleged conspiracy in the

restraint of trade. As such, Plaintiffs easily satisfy the commonality requirement.
The claims of each Class Member involve the *same* common conduct and every
issue of liability is common to the Class. As the Court found in *Arkona, LLC v. Cty.
Of Cheboygan,* No. 1:19-cv-12372, 2020 WL 4366027 at *4  (E.D. Mich. July 30,
2020),  "[l]egally, the question of whether this is a cognizable . . . injury is the same
for each of the putative class members." *Arkona* at *4. Moreover, should Defendants
contend that there is a difference in damages among the class members, for whatever
reason, this would simply be "a difference in damages between two Plaintiffs, not a
difference in injury." *Arkona* at *5.

**3.    The Class Representatives' Claims Are Typical.**

The claims of the named Plaintiffs satisfy Fed. R. Civ. P. 23(a)(3)'s typicality
requirement. Plaintiff Denard Robinson is a former NCAA student-athlete who
played football at the University of Michigan from 2009 to 2012. (Doc. No., 1,
Complaint, ¶ 1, PageID.3). Robinson's legacy as a Michigan quarterback is firmly
established in the record books. *Id.* He still holds several key records, including the
most rushing yards by a quarterback in NCAA history, the most total yards in a
single season in Michigan's storied history, and the most rushing touchdowns by a
quarterback at Michigan. *Id.* Robinson also holds the Michigan record for the most
200-yard rushing games by a quarterback and the longest run from scrimmage by a
quarterback. *Id.*

These iconic moments have been repeatedly shown and replayed on Big Ten's media outlet, the Big Ten Network, and related networks, helping continue the fascination and passion of the sport. (Doc. No., 1, Complaint, ¶ 1, PageID.3). They have significantly contributed to the revenue generated by the NCAA and its partners. *Id.* Despite his pivotal role in creating these commercially valuable moments, Robinson has never received compensation and was NOT allowed to capitalize monetarily for the use of his name, image, and likeness and lost out on several million dollars. *Id.*, at 3-4.

Braylon Edwards is a former NCAA student-athlete who was a wide receiver on the University of Michigan football team from 2001 to 2004. (Doc. No., 1, Complaint, ¶ 2, PageID.4). Edwards delivered some of the most unforgettable moments in Michigan football history, including his iconic three-touchdown game against Michigan State in 2004, which remains a staple in highlight reels and has been replayed countless times across television broadcasts, online platforms, and promotional materials. *Id.* These moments have driven substantial commercial revenue for the NCAA, Big Ten and its broadcasting partners, like the Big Ten Network. *Id.*

Despite his significant contributions and the ongoing use of his name, image, and likeness to generate profits, Edwards has never been compensated for the commercialization of his personal attributes and was NOT allowed to capitalize

monetarily for the use of his name, image, and likeness and lost out on several million dollars. (Doc. No., 1, Complaint, ¶ 2, PageID.4).

Michael Martin is a former NCAA student-athlete who was a defensive lineman on the University of Michigan football team from 2008 to 2011. (Doc. No., 1, Complaint, ¶ 3, PageID.4-5). Martin played a pivotal role in memorable victories, such as the 2011 win over Notre Dame. *Id.*, at p. 5. His commanding performances and game-changing plays, including powerful tackles, have been showcased in numerous highlight reels and promotional videos, generating significant revenue for the NCAA and its partners. *Id.* Despite his substantial contributions and the repeated broadcast of his highlights, Martin has never been compensated for the commercial use of his name, image, and likeness, drawing viewers and advertisers alike without receiving any share of the profits. *Id.*

Shawn Crable is a former NCAA student-athlete who played linebacker on the University of Michigan football team from 2003 to 2007. (Doc. No., 1, Complaint, ¶ 4, PageID.5). Crable's powerful presence and leadership on the field were pivotal in key victories, such as his memorable sack against Penn State in 2005 that helped secure a crucial win. *Id.* His standout performances have been immortalized in numerous highlight reels, which continue to be replayed across television broadcasts, online platforms, and promotional materials, generating significant revenue for the NCAA and its partners. *Id.*, at pp. 5-6. Despite his critical

contributions and the ongoing commercial use of his name, image, and likeness, Crable has never received compensation for the exploitation of his personal attributes, which have been utilized to attract viewers and generate profits for the NCAA and its affiliates. *Id.*, at p. 6.

The NCAA, Big Ten,  Big Ten Network, and its agents and subsidiaries, have systematically exploited these iconic moments that these Class Representatives have created without compensating the student-athletes who created them. These organizations have monetized the athletic feats of Martin, Robinson, Edwards, Crable, and countless other University of Michigan football players by broadcasting, advertising, and selling merchandise featuring their performances, all without their consent or any form of remuneration. Defendants have used the images and videos of Plaintiffs and similarly situated Class Members to advertise for their commercial purposes without the athletes' consent and while paying them nothing.

The typicality element of Rule 23(a) is intended to "limit the class claims to those fairly encompassed by the named plaintiffs' claims." *Avio, Inc., supra*, 311 F.R.D. at 444, quoting *General Telephone Co. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). A named plaintiff's claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory *Avio, Inc., supra,* quoting  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007).

This test is also not very demanding. *Davidson v. Henkel Corp.*, 302 F.R.D. 427, 438 (E.D. Mich. 2014), and "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).

"The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Avio, Inc., supra,* quoting *Sprague v.  General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). The "'commonality' and 'typicality' inquiries overlap to a degree," but "commonality focuses on similarities and typicality focuses on differences." *Avio, Inc., supra*, quoting *Northwest Airlines*, 208 F.R.D. at 218.

Here, there are few differences between potential class members. Just like the members of both Classes, each class representative has competed as an NCAA Division I college football athlete and was subject to uniform NIL restrictions. All class members, including Class Representatives, allege that those rules are anticompetitive and violate the Sherman Act § 1. All class members, including Class Representatives, similarly allege that they were inured because, absent the rules, they would have had the opportunity to receive --- and would in fact have received, NIL compensation.

All class members, including Class Representatives, are former University of Michigan football players, who have also contributed significantly to the rich history

and success of University of Michigan football. (Doc. No. 1, Complaint, ¶ 15, PageID.10). Their memorable plays and pivotal moments have also been utilized in broadcasts, promotions, and merchandise, driving revenue without any compensation. *Id.* These student-athletes have equally been denied their fair share of the profits generated from their hard work and talent. *Id.*. These players would have capitalized and earned money on their name and image in the small window that was their college football career, but they were wrongfully and unlawfully denied from doing so. *Id.*, at. p. 10-11. Thus, typicality is satisfied.

### 4.   The Proposed Class Representatives and Their Counsel Will Adequately Represent the Classes.

Rule 23(a)(4) requires determining whether "the representative parties will fairly and adequately protect the interests of the class."  This is measured by the extent to which the name plaintiffs' interests are not antagonistic to those of the class.  *See Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 543 (6th Cir. 2012).

Plaintiffs and their counsel will adequately represent the proposed classes. The test for adequacy turns on two questions: "(1) the representatives' interests do not conflict with the class members' interests, and (2) the representatives and their attorneys will be able to prosecute the action vigorously." *Avio, Inc. supra*, 311 F.R.D. at 444, quoting *In re Caridizen CD Antitrust Litig.*, 200 F.R.D. 326, 336 (E.D. Mich. 2001). "The adequacy of representation requirement is designed to protect class members who are not named as parties to the action but nevertheless who will

be bound by the judgment." *Avio, Inc. supra*, 311 F.R.D. at 444, quoting In re Foundry Resin Antitrust Litig., 242 F.R.D. 393, 406 (S.D. Ohio 2007).

The named Plaintiffs are adequate representatives of the proposed Classes. Their interests are aligned with all class members in challenging the lawfulness of the restraints that have restricted compensation Class Members may receive for use of their NIL rights. The also align with other class members in proving that the restraints damage class members. Plaintiffs have further demonstrated that they will prosecute this action vigorously.

Plaintiffs satisfy both prongs. *First*, there are no potential intra-class conflicts and no hint of antagonism between the claims of Plaintiffs and the proposed Class. Plaintiffs are members of the Class they seek to represent and assert the same type of claim for damages. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006). Plaintiffs and all members of the proposed Class seek to hold Defendants responsible for the conduct described here. And, again, all members of the Class have been harmed by the same identical course of conduct by all of the Defendants.

*Second*, Plaintiffs and their counsel are committed to vigorously prosecuting this litigation and will endeavor to obtain the largest recovery for the Class consistent with good faith and sound judgment. Plaintiffs and their counsel have already devoted hundreds of hours of work – all in the interests of the class – toward the prosecution of this case and are prepared to proceed with the case efficiently and

aggressively until its conclusion. Proposed Co-Lead Counsel are highly qualified, experienced, and able to prosecute the litigation.  *See Potter v. Blue Cross Blue Shield,* 2011 WL 9378789, at *7 (E.D. Mich. July 14, 2018) (adequacy met by "experienced attorneys who have in the past successfully litigated the same claims at issue here"). Plaintiffs have retained such counsel, as discussed further *infra*.

Collectively, Messrs. Acho, Vinson, and Campbell bring to the table substantial experience in both class actions and the unique sort of issues present here. All have experience with class action practice and with litigation involving complex, developing legal concepts.  Mr. Acho has shown the ability to successfully litigate any and all types of complicated matters.  Mr. Acho is recognized as a leading litigator in Michigan with a national reputation, having secured millions of dollars for former athletes, often through the litigation of novel issues.  Mr. Acho has been involved in two of the largest class actions in sports history and in fact was the attorney who organized and led one of them (MLB pension class action suit, 2002). Mr. Vinson himself has twice been lead counsel in two class actions, one as defense counsel for Detroit Edison and one as Plaintiff's counsel against Delta Airlines.

Messrs. Vinson and Campbell have developed a deep knowledge and level of experience with all matters related to litigation. All of the lawyers, and their firm, are aware of the substantial time and financial commitment required to prosecute

class actions and complex litigation and are willing to commit the time and financial resources to what will likely be time-consuming and expensive litigation.

Further, in retaining Cummings, McClorey, Davis & Acho, Plaintiffs have employed a firm with a long track record of representing football players and are well-versed in litigation. The firm has achieved significant litigation success.

## C. Plaintiffs Satisfy The Requirements of Fed. R. Civ. P. 23(b).

Given the universal application of the challenged NCAA NIL rules, the declaratory relief the Plaintiffs seek would provide uniform relief to all members of the proposed Injunctive Relief Class. Rule 23(b)(2) applies where defendants have "acted or refused to act on grounds that apply generally to the class, so that the final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The Injunctive Class consists of student-athletes who competed prior to June 15, 2016. The Class seeks to permanently enjoin, and have declared unlawful, those rules that the NCAA has instituted to prevent members of the class from monetizing their NILs. For instance, the NCAA has imposed restrictive rules that prevent student-athletes from benefitting financially from their own names, images, and likenesses, while allowing the organization to profit immensely from these very attributes. (Doc. No., 1, Complaint, ¶ 54, PageID.25-26). The NCAA's Constitution and Bylaws, including § 12.5 explicitly forbid the commercial use of student-

athletes' NIL, yet the NCAA violates its own rules by coercing student-athletes into signing forms relinquishing these rights, and then the organization exploits these rights for commercial gain without compensating the athletes. (Doc. No., 1, Complaint, ¶ 55, PageID.26).

There can be no question that an anti-trust injunctive class seeking to enjoin common rules of this type meets the requirements of Fed. R. Civ. P. 23(b) for certification. There can also be no dispute that the challenged NIL rules have a common impact on all Injunctive Relief Class Members. The Rule 23(b) analysis here is the same as in *Bannon* and *Alston*, where the Court certified the injunctive relief classes because "an injunction would offer all class members 'uniform relief' from this harm." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, ("*O'Bannon*"), 2013 WL 5979327, at *7 (N.D. Cal. 2013), quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). See also *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Antitrust Litig.,* ("*Alston*"), 311 F.R.D. 532, 546 (N.D. Cal. 2015).

2. **The Damages Class Satisfied the Requirements of Fed. R. Civ. P. 23(b)(3).**

Certification is warranted under rule 23(b)(3) because "the questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**A.    Common issues of fact and law predominate because legal and factual questions will be resolved with proof common to Plaintiffs and Class members.**

A common question "is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized class-wide proof." *Tyson Foods, Inc. v Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 WILLIAM B. RUBENSTEIN, NEWBURG ON CLASS ACTIONS § 4:50, at 196-97 (5th ed. 2012)).  The "predominance inquiring tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Beattie*, 511 F.3d at 564 (quoting *Amchem*, 521 U.S. at 632).  A plaintiff "must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole [] predominate over those issues that are subject only to individualized proof.'" *Id.* (internal citations omitted).  Even when there are some individualized damage issues, a common issue predominates when liability can be determined on a class-wide basis.  *Id.*

At least one common issue will predominate the trial of Plaintiffs' claims.  The evidence necessary to establish those claims is common to Plaintiff and all members of the Class – Plaintiffs and the Class seek to prove that defendants' conduct was uniformly wrongful.  This common issue is "more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 136 S. Ct. at 1045.

Here, the issues to be litigated include: (1) whether there has been an unlawful conspiracy that caused anticompetitive effects in the relevant labor market; (2) whether there are any procompetitive justifications for the restraints or less restrictive alternatives; (3) the impact of the restraints in causing antitrust injury to class members; and (4) class-wide damages. These common issues predominate over any individualized ones.

**B.     A Class Action is a superior method of adjudicating this dispute.**

Rule 23(b) is designed to "achieve economies of time, effort, and expense and promote [] uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem,* 521 U.S. at 615.  Consequently, a class action must be superior to other available methods of fair and efficient adjudication.  Fed. R. Civ. P. 23(b)(3). Certification is appropriate under Fed. R. Civ. P. 23(b)(3) if class treatment "is superior to other available methods for fairly and efficiently adjudicating the controversy."

The relevant superiority factors to consider are: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions;" (2) "the extent and nature of any litigation concerning the controversy already begun by or against the class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in a [particular forum": and (4) "the likely difficulties of managing a class action." Fed. R. Civ. P. 23(b)(3).

All four superiority factors favor class treatment here. For the first factor, although the amount of damages sustained by each class member will vary, the measure of damages sustained by dozens of individual class members will likely be too low to incentivize members to litigate their claims individually. This is especially true given how expensive it would be for individual class members to marshal the evidence needed to prevail in antitrust litigation against well-funded Defendants such as the NCAA, the Big Ten, and BTN. The claims here are simply too low to incentivize many Class members to litigate their claims individually, particularly in light of defendants' resources, and weighs in favor of concentrating the claims in a single forum. *In re Whirlpool,* 722 F.3d at 861.

As to the third factor, individual litigants, except in a few cases, would have difficulty marshalling the resources to litigate these claims individually. See *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) ("[t]he *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits" because of litigation costs". Already-strapped judicial resources will also be conserved via class certification. *Avio, Inc. supra,* 311 F.R.D. at 446.

The second factor – the extent and nature of any similar litigation – also favors class certification.  Plaintiffs are not aware of any other similar litigation involving solely the University of Michigan football team.

The final superiority factor – "the likely difficulties in managing a class action" – focuses on whether "economies of time, effort, and expense … would be served, and hence, whether a class action is superior to other available methods." *Bobbitt v. Acad. Of Court Reporting, Inc.*, 252 F.R.D. 327, 344 (E.D. Mich. 2008). The question is whether multiple individual lawsuits would be more manageable than a class action, and not whether trying the class claims is easy. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir. 2004). It is not whether a "class action will create significant management problems, but instead determining whether it will create relatively more management problems than any of the alternatives." *Id.* Courts are "hard pressed to conclude that a class action is less management than [thousands of] individual actions… [m]ultiple lawsuits brought by thousands … would be costly, inefficient, and would burden the court system"). *Id.*

It is a 'well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015) (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2nd Cir. 2001)). Given that the salient issues in this case will be resolved by common proof, this case can be tried efficiently, and Plaintiffs do not foresee any serious manageability problems and certainly none that make thousands of individual actions a better alternative. "Here, substituting a single class action for numerous trials in a matter involving substantial common legal issues and factual

issues susceptible to generalized proof will achieve significant economies of 'time, effort and expense, and promote uniformity of decision." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F..3d 108, 130 (2nd Cir. 2013).

Class certification here is superior to other available methods for the fair and efficient adjudication of this matter.  And where the defendants are juridically related as here, the Sixth Circuit made it clear that "a single resolution of the dispute would be expeditious."  *Thompson, Thompson v. Bd. Of Educ. Of Romeo Cmty. Sch.*, 709 F2d 1200, 1205 (6th Cir. 1983). Victims of Defendants' wrongful and unlawful conduct should not be forced to bring their own actions  Class certification offers judicial efficiencies because it permits common claims and issues to be tried together.  To deny class certification would risk "closing the door of justice to all small claimants," which is precisely what "the class suit practice was to prevent." *Weeks v. Bareco Oil Co.*, 125 F.d 84, 90 (7th Cir. 1941).  This Court agreed in *Avio that:* "There are up to 10,415 plaintiffs in this suit with the same claim under the same federal statute. With that large number in mind, it is impossible to imagine individual lawsuits; disposition by class action is certainly, in this case, an efficient use of judicial resources.". *Avio, Inc., supra*, 311 F.R.D. at 446.

## VII.  THE COURT SHOULD APPOINT JAMES R. ACHO, ETHAN VINSON. AND KEVIN CAMPBELL AS CO-LEAD CLASS COUNSEL

Under Rule 23(g)(1)(A), in appointing class counsel, the Court is to consider: (i) the work that counsel has performed in identifying or investigating potential

claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). *In re Delphi ERISA Litig*., 230 F.R.D. 496, 498 (E.D. Mich. 2005) (citing previous codification at Fed. R. Civ. P. 23 (g)(1)(C)(I)). Under Rule 23(g)(1)(B), the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Thus, "[i]n determining lead counsel, a court should conduct an independent review to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable." *In re Delphi ERISA Litig.,* 230 F.R.D. at 498 (citing the Manual for Complex Litigation §10.22, Pp.24-28 (4th Edition, 2004)). Messrs. Acho, Vinson, and Campbell, respectfully submit that, together and individually, they satisfy these criteria.

## A. Professional experience in this type of litigation, and willingness and ability to commit to a time-consuming process.

Mr. Acho, Mr. Vinson, and Mr. Campbell possess substantial experience in class actions and the unique issues present here, as is more specifically detailed in their firm resume and declaration set forth at **Exhibits B, C and D**. In particular, Mr. Acho was the attorney that organized the class action lawsuit against Major League Baseball in 2002 and remains counsel of record for the NFL concussion

lawsuit.  This depth and breadth of experience have given them an appreciation of the magnitude of commitment of time, energy, and resources necessary for effective leadership in class actions and an appreciation of the complexities inherent with respect to the issues raised by this case. Attorneys James R. Acho, Ethan Vinson, and Kevin J. Campbell bring extensive professional experience in complex litigation and demonstrate a strong willingness and ability to commit the necessary time, attention, and resources to this case. Their combined expertise ensures that the putative class will receive exceptional representation throughout this demanding process.

**James R. Acho**: A partner at Cummings, McClorey, Davis & Acho, P.L.C. (CMDA), Mr. Acho is a nationally recognized sports law attorney with decades of experience representing retired professional athletes, including MLB and NFL players. In December 2024 he received the Michigan Lawyers Weekly "Leader in the Law" award for his work in the area of sports law on behalf of former athletes. For thirteen years, he was the professor of sports law at Madonna University before retiring from that position.  His extensive background in class action litigation, antitrust law, and contractual disputes, particularly involving high-profile organizations, equips him to handle the complexities of this case. Mr. Acho has consistently demonstrated his ability to navigate time-intensive legal processes with the utmost professionalism and dedication.

**Ethan Vinson**: With nearly five decades of legal experience, Mr. Vinson has a distinguished career as both a litigator and a municipal attorney having initially joined this firm in 1979, Mr. Vinson personally handled two (2) class actions in the 1980s and 1990s; one against Detroit Edison where he was lead defense counsel and one where he was plaintiff's counsel in a class action case against Delta Airlines. He has also served in an advisory capacity on a pension class action of more recent vintage.  His tenure includes serving as City Attorney for the City of Warren and handling cases involving governmental entities, employment disputes, and high-stakes litigation. Mr. Vinson's depth of knowledge and experience demonstrates his capability to dedicate the necessary time and resources to ensure success in this matter.   Mr. Vinson is highly respected by his peers for his acumen and professionalism.

**Kevin J. Campbell**: As a seasoned litigation attorney, Mr. Campbell has successfully litigated cases involving commercial disputes, premises liability, labor and employment law, and constitutional claims. His extensive experience in managing multifaceted litigation ensures he is well-prepared for the rigorous demands of this case. Mr. Campbell's strong track record of commitment to his clients highlights his ability to remain fully engaged in complex, time-consuming legal matters.

Collectively, Messrs. Acho, Vinson, and Campbell have a proven history of handling complex litigation requiring extensive time and attention. Their firm's long-standing reputation for excellence, combined with their personal expertise in class action cases and related legal fields, positions them uniquely to bear the burden of addressing the critical issues on behalf of the putative class.

**B.      Ability to work cooperatively with others**

Messrs. Acho, Vinson, and Campbell are committed to working cooperatively and to advancing a united approach in this litigation. This commitment is exemplified by Mr. Acho's successful work in other large class cases, and by Messrs. Vinson and Campbell's working extensively with each other and with Mr. Acho on this case thus far.

**C.      Access to sufficient resources to advance the litigation in a timely manner**

Proposed counsel have already devoted significant resources to representing the interests of Plaintiffs and the class members and will continue to devote the required resources to aggressively represent and advance the interests of Plaintiffs and the class members.   These resources, along with the proposed Counsel's substantial subject-matter expertise, will along them to pursue the prosecution of the complex claims raised in this litigation.   All are aware of the substantial time and financial commitment required to prosecute class actions and complex litigation and

are willing to commit the time and financial resources to what will likely be time-consuming and expensive litigation.

## D.    Substantial work already done to identify and investigate Plaintiffs' claims

Courts routinely look to which counsel expended the most resources in identifying and investigating the potential claims of plaintiffs and class members. *See In re Municipal Derivatives Antitrust Litig.,* 252 F.R.D 184, 186 (S.D.N.Y 2008) (concluding work done by counsel was a decisive factor).  In this case, proposed Counsel have dedicated substantial resources investigating the facts underlying the actions and developing the applicable legal bases for liability.  Messrs. Acho, Vinson, and Campbell have worked extensively both on this case and on similar cases, as discussed in more detail in the attached declarations.  By any measure, proposed Co-Lead Counsel have invested significant time, effort, and resources to advance this litigation, and they will continue to do so.

## VII.   CONCLUSION

Plaintiffs satisfy all of the elements of Rule 26(a), (b)(3), and 23(g).  The class action mechanism is not only the best and most efficient way to adjudicate the Class members' claims, but it is the only viable method of doing so.  For all of the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion.

WHEREFORE, Plaintiffs' respectfully request that this Honorable Court grant this Motion and certify a plaintiff class pursuant to Fed. R. Civ. P 23(a) and

23(b)(3), appoint Plaintiffs' counsel of choice, James R. Acho, Ethan Vinson, and Kevin J. Campbell of the law firm Cummings, McClorey, Davis & Acho, PLC as class counsel pursuant to Fed. R. Civ. P. 23(g); and appoint Denard Robinson, Braylon Edwards, Michael Martin, and Shawn Crable as class representatives, and order any other relief the Court deems appropriate.

Respectfully submitted,

CUMMINGS MCCLOREY DAVIS & ACHO, PLC

/s/James R. Acho
JAMES R. ACHO (P62175)
ETHAN VINSON (P26608)
KEVIN J. CAMPBELL (P66367)
**Attorneys for Plaintiffs**
17463 College Parkway, 3rd Floor
Livonia, Michigan 48152
Dated:  December 12, 2024          (734) 261-2400 / (734) 261-4510

## <u>LOCAL RULE CERTIFICATION</u>

I, James R. Acho, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Respectfully submitted,

CUMMINGS MCCLOREY DAVIS & ACHO, PLC

/s/James R. Acho
JAMES R. ACHO (P62175)
ETHAN VINSON (P26608)
KEVIN J. CAMPBELL (P66367)
**Attorneys for Plaintiffs**
17463 College Parkway, 3rd Floor
Livonia, Michigan 48152
Dated:  December 12, 2024          (734) 261-2400 / (734) 261-4510

## PROOF OF SERVICE

I declare under penalty of perjury that on December 12, 2024, I served a copy of the foregoing instrument via electronic filing through the Eastern District of Michigan, Southern Division, efile website.   The above statement is true to the best of my knowledge and information.

/s/ Annamarie L. Moore