## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DENARD ROBINSON; BRAYLON EDWARDS; MICHAEL MARTIN; SHAWN CRABLE, Individually and on behalf of themselves and former University of Michigan football players similarly situated, | Honorable Terrence G. Berg

Magistrate Judge Kimberly G. Altman

No. 2:24-cv-12355-TGB-KGA |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION aka "NCAA"; BIG TEN NETWORK aka "BTN"; and BIG TEN CONFERENCE, | |
| Defendants. | |

## DEFENDANT BIG TEN NETWORK'S MOTION TO DISMISS

Defendant Big Ten Network ("BTN") moves to dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The grounds for dismissal are explained in the accompanying Brief.

In accordance with Local Rule 7.1(a), BTN's counsel conferred with Plaintiffs' counsel by telephone on January 12, 2025, to seek concurrence in the relief sought in this Motion to Dismiss. BTN's counsel explained the nature of the

Motion and each ground for the relief sought in the Motion. Plaintiffs' counsel

informed BTN's counsel that Plaintiffs declined to concur in the Motion.

Dated: January 13, 2025                      Respectfully submitted,

                                             */s/ Bradley R. Hutter*
                                             *Bradley R. Hutter (MN 0396531)
                                             **FAFINSKI MARK & JOHNSON, P.A.**
                                             One Southwest Crossing
                                             11095 Viking Drive, Suite 420
                                             Eden Prairie, MN 55344
                                             (952) 995-9500
                                             *bradley.hutter@fmjlaw.com*

                                             *Attorney not admitted in this District,
                                             co-signing under LR 83.20(i)(l)(D)(i).
                                             Attorney application for admission
                                             pending.

                                             */s/ Louis F. Ronayne*
                                             Louis F. Ronayne (P81877)
                                             Justin M. Wolber (P85728)
                                             **VARNUM LLP**
                                             39500 High Pointe Boulevard, Suite 350
                                             Novi, MI 48375
                                             (248) 567-7400
                                             *lfronayne@varnumlaw.com*
                                             *jmwolber@varnumlaw.com*

                                             *Counsel for Defendant Big Ten Network*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DENARD ROBINSON; BRAYLON EDWARDS; MICHAEL MARTIN; SHAWN CRABLE, Individually and on behalf of themselves and former University of Michigan football players similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION aka "NCAA"; BIG TEN NETWORK aka "BTN"; and BIG TEN CONFERENCE,<br><br>          Defendants. | Honorable Terrence G. Berg<br><br>Magistrate Judge Kimberly G. Altman<br><br>No. 2:24-cv-12355-TGB-KGA<br><br>**ORAL ARGUMENT REQUESTED** |

## BRIEF IN SUPPORT OF
## DEFENDANT BIG TEN NETWORK'S
## MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................1

BACKGROUND ............................................................................................2

LEGAL STANDARD....................................................................................4

ARGUMENT ................................................................................................5

I.      PLAINTIFFS FAIL TO STATE A SHERMAN ACT CLAIM AGAINST DEFENDANT BTN....................................................................................5

    A.   Plaintiffs fail to allege that BTN joined any unlawful conspiracy. ..........5

    B.   Plaintiffs fail to allege that BTN caused any antitrust injury. .................8

II.     PLAINTIFFS FAIL TO STATE AN UNJUST ENRICHMENT CLAIM AGAINST BTN. ..........................................................................................9

    A.   Plaintiffs fail to allege they have provided a direct benefit to BTN.......10

    B.   Plaintiffs fail to allege BTN's conduct was the cause of any unjust enrichment...........................................................................................11

CONCLUSION ............................................................................................12

# TABLE OF AUTHORITIES

## Cases

*Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008)............9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................5, 8

*Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079 (6th Cir. 1996) ............................7

*Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*,
   48 F.4th 656 (6th Cir. 2022) ............................7

*In re Cardizem CD Antitrust Litig.*, 332 F.3d 896 (6th Cir. 2003)............................9

*In re Polyurethane Foam Antitrust Litig.*,
   799 F. Supp. 2d 777 (N.D. Ohio 2011) ............................6, 7

*Jackson v. Southfield Neighborhood Revitalization Initiative*,
   --- N.W.3d ---, No. 361397, 2023 WL 6164992
   (Mich. Ct. App. Sept. 21, 2023) (per curiam) ............................ 11, 12, 13

*Johnson v. Ventra Group, Inc.*, 191 F.3d 732 (6th Cir. 1999)............................11

*Karaus v, Bank of N.Y. Mellon*, 831 N.W.2d 897 (Mich. Ct. App. 2012)............................12

*Marshall v. ESPN Inc.*, 111 F. Supp. 3d 815 (M.D. Tenn. 2015) ............................1, 10

*Marshall v. ESPN*, 668 F. App'x 155 (6th Cir. 2016) ............................1, 10

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984)............................6

*Morris Pumps v Centerline Piping, Inc.*,
   729 N.W.2d 898 (Mich. Ct. App. 2006)............................11

*Osborn v. Griffin*, 865 F.3d 417 (6th Cir. 2017)............................11

*Sage Chem., Inc. v. Supernus Pharm., Inc.*, No. CV 22-1302-CJB,
   2024 WL 2832343 (D. Del. June 4, 2024) ............................8

*Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601 (E.D. Mich. 2017) ............................5

*Solo v. United Parcel Serv. Co.*, 819 F.3d 788 (6th Cir. 2016)............................11

*Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*,

552 F.3d 430 (6th Cir. 2008) ..................................................................... 5, 6, 7, 8

*Trotta v. Am. Airlines, Inc.*, No. 2:23-CV-12258-TGB-CI, 2024 U.S. Dist. LEXIS

195795, *15-16 (Berg., J.) (E.D. Mich. July 18, 2024) ..........................................10

*United States ex rel. Angelo v. Allstate Ins. Co.*,

620 F. Supp. 3d 674, 684 (E.D. Mich. 2022) ..........................................................3

## Other Authorities

Press Release, Big Ten Conference, Big Ten Network to Officially Launch August

30, (July 2, 2007) ...............................................................................................3

*See* SEC Form 10-K, Fox Corporation (Aug. 8, 2024),

https://investor.foxcorporation.com/static-files/274e4997-0831-49c8-883d

ca08cdf46b6e .....................................................................................................4

## Rules

Fed. R. Civ. P. 12(b)(6)...............................................................................................4

## ISSUES PRESENTED

I.      Have Plaintiffs adequately pled antitrust conspiracy claims against the Big Ten Network when the Amended Complaint does not allege that BTN played any role in the adoption or enforcement of the NCAA rules that form the basis of Plaintiffs' claims, such that Plaintiffs cannot plausibly allege that BTN joined the alleged conspiracy or that BTN's conduct caused Plaintiffs to suffer antitrust injury?

II.     Have Plaintiffs adequately pled an unjust enrichment claim against BTN where they have not alleged that they had any direct contact with BTN or suffered an inequity because of BTN's retention of the alleged benefit in question?

**TABLE OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

1.   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

2.   *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008)

3.   *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 783 (N.D. Ohio 2011)

4.   *Marshall v. ESPN Inc.*, 111 F. Supp. 3d 815 (M.D. Tenn. 2015)

5.   *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601 (E.D. Mich. 2017)

6.   *Trotta v. Am. Airlines, Inc.*, No. 2:23-CV-12258-TGB-CI, 2024 U.S. Dist. LEXIS 195795, (E.D. Mich. July 18, 2024)

7.   *Jackson v. Southfield Neighborhood Revitalization Initiative*, No. 361397, 2023 WL 6164992 (Mich. Ct. App. Sept. 21, 2023) (per curiam)

## INTRODUCTION

The Amended Complaint should be dismissed as to all Defendants for the reasons stated in Defendants' joint Motion to Dismiss:  (1) Plaintiffs' claims are time-barred; (2) certain of Plaintiffs' claims are barred by *res judicata* or by class-wide releases in prior litigation related to NCAA rules; (3) Plaintiffs have not and cannot plead injury-in-fact or antitrust injury as to any Defendant; and (4) Plaintiffs cannot repackage their meritless antitrust claims into a state-law unjust enrichment claim.

The Amended Complaint should be dismissed as to BTN for three additional reasons. *First*, the Amended Complaint does not plausibly allege that BTN joined the allegedly unlawful conspiracy—one centered on the adoption and implementation of the *NCAA's* rules barring compensation for student-athletes' names, images, and likenesses ("NIL") and purportedly requiring student-athletes to assign away their NIL rights. BTN is a television network. It does not have any say in the relevant NCAA rules, which long predate BTN's existence. Accordingly, Plaintiffs do not allege facts showing that BTN joined the "conspiracy" they are challenging.

*Second*, and relatedly, Plaintiffs have not alleged that BTN's conduct was the cause of any antitrust injury, because their alleged injuries flow from pre-existing NCAA rules that BTN had no role in adopting or enforcing. The Sixth Circuit has

reached that exact conclusion already in *Marshall v. ESPN Inc.*—and with respect to the Big Ten Network and other television networks no less. *See* 111 F. Supp. 3d 815 (M.D. Tenn. 2015), *aff'd, Marshall v. ESPN*, 668 F. App'x 155, 157 (6th Cir. 2016). The same result is warranted here.

*Third*, and finally, Plaintiffs' unjust enrichment claim against BTN fails as a matter of law. To state this claim, Plaintiffs must allege they provided a benefit to BTN through "direct contact" with BTN. But Plaintiffs do not allege they have had any direct relationship with BTN, and the claim therefore fails. Furthermore, Plaintiffs must plead causation, which in this context requires allegations showing that Plaintiffs suffered an inequity because of BTN's retention of the alleged benefit in question. Plaintiffs cannot satisfy that pleading obligation because Plaintiffs would have been in the exact same position with or without BTN's existence: unable to monetize their supposed NIL rights by virtue of pre-existing NCAA rules. The Michigan Court of Appeals has held that a claim for unjust enrichment fails against a downstream third-party to a contract—like BTN here—in materially identical circumstances.

For these reasons, in addition to the reasons stated in Defendants' joint Motion to Dismiss, Plaintiffs' claims against BTN should be dismissed.

## BACKGROUND

Plaintiffs are four former student-athletes who played football at the

University of Michigan between 2001 and 2012. ECF No. 24, PageID.219-222 (¶¶ 1–4). They bring antitrust claims and an unjust enrichment claim which they say are "based on the NCAA's long-standing practices and agreements that restrict student-athletes' ability to monetize their identities." *Id.*, PageID.235 (¶ 37).

Citing NCAA Bylaw 14.1.3.1, Plaintiffs allege that, for "decades," NCAA rules have required "student-athletes to sign forms that effectively transfer[red] their publicity rights to the NCAA" and the NCAA's member institutions. *Id.*, PageID.230-31, 237-38, 268-69 (¶¶ 22, 43, 54, 120). The Amended Complaint repeatedly ties Plaintiffs' claims to the adoption or enforcement of NCAA rules.[1]

Launched in 2007,[2] BTN is a joint venture between Fox Corporation and The Big Ten Conference that broadcasts sporting events and related programming

---

[1] *See, e.g.*, ECF No. 1, PageID.228 (¶ 18) (alleging that the "NCAA's policies" are inequitable); *id.*, PageID.230 (¶ 22) (claiming that "NCAA rules" effectively require transfer of publicity rights); *id.*, PageID.234, 242 (¶¶ 33, 53) (Plaintiffs "seek to hold the NCAA accountable . . . ."); *id.*, PageID.234 (¶ 34) ("This action seeks to correct the systemic injustices perpetuated by the NCAA . . . ."); *id.*, PageID.241 (¶ 50) (referring to the "NCAA's mandate" that student-athletes relinquish publicity rights); *id.*, PageID.268 (¶ 120) (tying the alleged conspiracy to "NCAA rules and practices").

[2] *See* Press Release, Big Ten Conference, Big Ten Network to Officially Launch August 30, (July 2, 2007), *available at* https://web.archive.org/web/20140907053222/. The Court can take judicial notice of this press release. *United States ex rel. Angelo v. Allstate Ins. Co.*, 620 F. Supp. 3d 674, 684 (E.D. Mich. 2022).

3

featuring Big Ten institutions. *Id.*, PageID.223 (¶ 8). It is majority owned by Fox.[3] Plaintiffs do not allege that BTN ever agreed to—or had any say in—the NCAA policies that purportedly restrict Plaintiffs' publicity rights. Rather, Plaintiffs allege only that BTN "monetized" and "exploited" footage of football games in which Plaintiffs appeared without compensating them. *Id.*, PageID.228, 254 (¶¶ 19, 81). Plaintiffs also allege that BTN replays footage of those old football games and makes money by doing so. *Id.*, PageID.233, 238, 245, 246, 250, 251 (¶¶ 29, 45, 62, 64, 72, 73).

## LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and if "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief, " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Especially in the antitrust context, "[g]eneric pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy," is

---

[3] *See* SEC Form 10-K, Fox Corporation, at 6 (Aug. 8, 2024) (Fox "owns approximately 61% of the Big Ten Network"), https://investor.foxcorporation.com/static-files/274e4997-0831-49c8-883d-ca08cdf46b6e. The Court may take judicial notice of an SEC filing. *See Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001).

insufficient. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436–37 (6th Cir. 2008). If a cause of action fails as a matter of law, the Court must grant dismissal. *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 607 (E.D. Mich. 2017) (quoting *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009)).

## ARGUMENT

## I.   PLAINTIFFS FAIL TO STATE A SHERMAN ACT CLAIM AGAINST DEFENDANT BTN.

In addition to the reasons described in Defendants' Joint Motion to Dismiss, Plaintiffs' antitrust claims (Counts I–III) should be dismissed against BTN because the Amended Complaint does not plausibly allege (1) that BTN entered into the unlawful conspiracy that Plaintiffs are challenging or (2) that BTN was the cause of any antitrust injury.

### A.   Plaintiffs fail to allege that BTN joined any unlawful conspiracy.

Section 1 of the Sherman Act extends only to those who "*make* any contract or *engage* in any [illegal] combination or conspiracy." 15 U.S.C. § 1 (emphasis added). To allege such a conspiracy, antitrust plaintiffs must plead facts plausibly suggesting that the relevant defendant had "a conscious commitment to a common scheme designed to achieve an unlawful objective," *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984), and must do so as to "*each* defendant's participation," *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 783

(N.D. Ohio 2011) (emphasis in original). Plaintiffs must allege the "who, what, where, when, how or why" of the conspiracy as to every defendant. *Total Benefits*, 552 F.3d at 437.

Plaintiffs' allegations against BTN do not meet these standards. Their Amended Complaint identifies the agreements that they challenge as unlawful: "the *NCAA's long-standing practices and agreements* that restrict student-athletes' ability to monetize their identities." ECF No. 24, PageID.235 (¶ 37) (emphasis added). And they spell out exactly which of the NCAA's "practices and agreements" they believe to be anticompetitive: the NCAA policies, including Bylaw 14.1.3.1, which purportedly bar compensation for the use of student-athletes' NIL in broadcast footage. *Id.*, PageID.228, 243, 244, 245, 256, 281 (¶¶ 18, 57, 58, 61, 86, 163); *see also supra* n.1. Again and again, Plaintiffs focus their fire on the NCAA's rules and policies, which they themselves say "are central to this case." *Id.*, PageID.245 ¶ 61.

Accordingly, Plaintiffs' burden at this stage is to allege facts showing BTN's participation in *that* agreement—one centered on the adoption, implementation, and enforcement of those allegedly unlawful NCAA rules. *Total Benefits*, 552 F.3d at 437; *In re Polyurethane Foam*, 799 F. Supp. 2d at 783. But Plaintiffs never allege that BTN had any say in adopting, enforcing, or implementing those rules. Nor could they, for BTN is not a member of the NCAA—it is a television network—and the

rules in question were enacted long before BTN first aired anything in 2007. PageID.232 (¶ 27); *see supra* n.2.

The Amended Complaint's few factual allegations addressing BTN do not come close to plausibly suggesting that BTN participated in the alleged conspiracy. Plaintiffs allege that BTN broadcasts and replays collegiate sporting events, including football games. *Id.*, PageID.219, 223, 229, 233, 238, 250 (¶¶ 1, 7, 8, 20, 29, 45, 70). And they claim that, through BTN's "broadcasting rights, advertising, and subscription fees," BTN "generates hundreds of millions of dollars." *Id.*, PageID.230 (¶ 21).

In other words, BTN broadcasts or replays college football games, and makes money doing so. But "merely [being] the beneficiary" of an allegedly anticompetitive agreement is not the same as participating in that agreement. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1092 (6th Cir. 1996); *see also Sage Chem., Inc. v. Supernus Pharm., Inc.*, No. CV 22-1302-CJB, 2024 WL 2832343, at *5 (D. Del. June 4, 2024) (granting motion to dismiss because complaint did not "assert that these Defendants participated in some type of wrongful conduct in addition to simply receiving . . . certain monies flowing from others' anticompetitive acts").

To be sure, Plaintiffs make numerous conclusory allegations of an illegal agreement between the NCAA and "co-conspirators"—some occasionally named,

like BTN, and others unnamed. *See, e.g.*, PageID.232, 236, 240, 242, 253, 262, 265 (¶¶ 26, 39, 49, 54, 77, 103, 111). But these allegations do not suffice for two reasons. First, Plaintiffs' repeated characterization of BTN as a "co-conspirator" is a mere "label[] and conclusion[]" that the Court is not bound to accept. *Twombly*, 550 U.S. at 555. Second, these statements are insufficient "[g]eneric pleading," in that they merely allege "misconduct against defendants without specifics as to the role each played in the alleged conspiracy." *Total Benefits*, 552 F.3d at 436–37. As to BTN, allegations of the "who, what, where, when, how or why" of the alleged conspiracy are entirely absent from the Amended Complaint. *Id.* at 437. Put simply, "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556–57.

### B.   Plaintiffs fail to allege that BTN caused any antitrust injury.

Even if Plaintiffs had alleged concerted action—which they did not—the Sherman Act claims against BTN should be dismissed for the independent reason that Plaintiffs have not alleged that BTN's conduct is the cause of any antitrust injury. A "private antitrust plaintiff, in addition to having to show injury-in-fact and proximate cause, must allege … 'antitrust injury.'" *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 909 (6th Cir. 2003). A plaintiff can show antitrust injury by alleging, as relevant here, that his "injury was *caused* by defendant's engaging in antitrust violations." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426,

434 (6th Cir. 2008) (emphasis added) (citing *Cardizem*, 332 F.3d at 914).

Sixth Circuit authority shows that Plaintiffs have not plausibly alleged that BTN was the cause of any antitrust injury here. In *Marshall v. ESPN Inc.*, plaintiffs filed a putative antitrust class action against, among others, broadcast networks, including BTN, "who allegedly profited from the broadcast and use of … Student Athletes' names, likenesses and images without permission." 111 F. Supp. 3d 815, 820 (M.D. Tenn. 2015). In dismissing the case, the court ruled that the plaintiffs there "fail[ed] to show how Defendants' behavior (*most particularly that of Network and Broadcast Defendants*), in complying with NCAA rules, can be said to be the cause of reduced competition and any concomitant antitrust injury." *Id.* at 835–36 (emphasis added). The Sixth Circuit summarily affirmed this "notably sound and thorough opinion." *Marshall v. ESPN*, 668 F. App'x 155, 157 (6th Cir. 2016). The same result follows here—at most, Plaintiffs here allege that BTN engaged in conduct that "compl[ies] with NCAA rules," just like the television networks in *Marshall*. *Marshall*, 111 F. Supp. 3d at 835.

## II. PLAINTIFFS FAIL TO STATE AN UNJUST ENRICHMENT CLAIM AGAINST BTN.

As Defendants' joint Motion to Dismiss notes, Plaintiffs do not state the

jurisdiction's law under which they bring their unjust enrichment claims.[4] Assuming Michigan law controls these claims by former University of Michigan student-athletes, *see Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016), Plaintiffs' claims fail against BTN for two reasons, in addition to the reasons set out in Defendants' joint Motion to Dismiss.

### A. Plaintiffs fail to allege they have provided a direct benefit to BTN.

First, Plaintiffs do not allege they have had any direct contact with BTN. To sustain an unjust enrichment claim, a plaintiff must allege that she provided a "direct benefit" to the defendant. *See A&M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 Mich. App. LEXIS 433, 2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008) (affirming dismissal of an unjust enrichment claim on the pleadings). For a plaintiff to have provided a direct benefit, she must have had "direct contact" with the defendant. *See Trotta v. Am. Airlines, Inc.*, No. 2:23-CV-12258-TGB-CI, 2024 U.S. Dist. LEXIS 195795, *15-16 (Berg., J.) (E.D. Mich. July 18, 2024) (citing *A&M Supply Co.* and dismissing an unjust enrichment claim under Rule 12(b)(6) for lack of "direct interaction" between plaintiff and defendant). Here, Plaintiffs allege only that BTN has derived a benefit from their participation in NCAA and Big Ten

---

[4] Plaintiffs' Amended Complaint cites a New York case called *Midland Insurance Co. v. Central Hanover Bank & Trust Co.*, 234 N.Y. 304 (1922). ECF No. 24, PageID.288 (¶ 184). BTN was unable to find that case in its research.

Conference athletics; they do not allege they provided that benefit through any direct relationship with BTN. For this reason, Plaintiffs' unjust enrichment claim against BTN fails.

> **B.      Plaintiffs fail to allege BTN's conduct was the cause of any unjust enrichment.**

Second, and relatedly, Plaintiffs fail to allege that BTN's actions caused any unjust enrichment. "[W]hether a claim for unjust enrichment can be maintained is a question of law." *Jackson v. Southfield Neighborhood Revitalization Initiative*, No. 361397, 2023 WL 6164992, at *21 (Mich. Ct. App. Sept. 21, 2023) (per curiam) (quoting *Morris Pumps v Centerline Piping, Inc.*, 729 N.W.2d 898 (Mich. Ct. App. 2006)). An unjust enrichment claim requires showing "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps*, 729 N.W.2d at 904. The second prong of this test contains a "causation element." *Jackson*, 2023 WL 6164992, at *22. For unjust enrichment claims against downstream third parties to a contract—like Plaintiffs' claims against BTN here—this element requires Plaintiffs to "to plead and prove 'an inequity resulting to [Plaintiffs] because of the retention of the benefit by'" *the third party specifically. Id.* (quoting *Karaus v, Bank of N.Y. Mellon*, 831 N.W.2d 897, 905 (Mich. Ct. App. 2012)).

*Jackson* illustrates this principle. There, homeowners had their property foreclosed on by Oakland County and then sold to a non-profit. *Id.* at *2–3. The

homeowners sued the non-profit under several theories, including unjust enrichment. *Id.* at \*5. The Michigan Court of Appeals affirmed dismissal of this claim, holding that the homeowners had not pled that the non-profit *caused* any "unjust taking." *Id.* at \*22. As the court noted, the "plaintiffs would have been in the exact same position if Oakland County sold the properties at a public auction, kept the properties for itself, or sold the properties to Michigan for the minimum bid." *Id.* In sum, the non-profit "simply did not cause plaintiffs to suffer damages." *Id.* at \*23.

So too here. As alleged, the circumstances giving rise to Plaintiffs' unjust enrichment claims are "[t]he NCAA's systematic exploitation of student-athletes' publicity rights, . . . institutionalized through its rules and practices . . . ." *Id.*, PageID.289 (¶ 184). Whatever the accuracy (or inaccuracy) of these characterizations, they say absolutely nothing about BTN's practices, or even reference BTN at all. It follows necessarily that BTN "did not cause [P]laintiffs to suffer damages." *Jackson*, 2023 WL 6164992, at \*23. Regardless of BTN's role, Plaintiffs would still "have been in the exact same position," *id.* at \*22—that is, without the ability to be compensated for their supposed publicity rights. This lack of causation also dooms their unjust enrichment claim against BTN.

## CONCLUSION

For these reasons, and those described in the Brief in support of Defendants' joint Motion to Dismiss, Defendant Big Ten Network respectfully requests that this

Court dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure

12(b)(6) for failure to state a claim.

Dated: January 13, 2025

Respectfully submitted,

*/s/ Bradley R. Hutter*
*Bradley R. Hutter (MN 0396531)
**FAFINSKI MARK & JOHNSON, P.A.**
One Southwest Crossing
11095 Viking Drive, Suite 420
Eden Prairie, MN 55344
(952) 995-9500
*bradley.hutter@fmjlaw.com*

*Attorney not admitted in this District,
co-signing under LR 83.20(i)(l)(D)(i).
Attorney application for admission
pending.

*/s/ Louis F. Ronayne*
Louis F. Ronayne (P81877)
Justin M. Wolber (P85728)
**VARNUM LLP**
39500 High Pointe Boulevard, Suite 350
Novi, MI 48375
(248) 567-7400
*lfronayne@varnumlaw.com*
*jmwolber@varnumlaw.com*

*Counsel for Defendant Big Ten Network*

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2025, I caused the foregoing Motion to Dismiss and supporting Brief to be electronically filed with the Clerk of the Court using the CM/ECF system.

*/s/ Louis F. Ronayne*