## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN

DENARD ROBINSON; BRAYLON
EDWARDS; MICHAEL MARTIN;
SHAWN CRABLE, Individually and on
behalf of themselves and former University
of Michigan football players similarly
situated,

          Plaintiffs,

v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION aka "NCAA"; BIG TEN
NETWORK aka "BTN"; and BIG TEN
CONFERENCE,

          Defendants.

Hon. Terrence G. Berg

Magistrate Judge Kimberly G. Altman

Case No. 2:24-12355-TGB-KGA

ORAL ARGUMENT REQUESTED

---

## DEFENDANTS' MOTION TO TRANSFER VENUE OR, IN
## THE ALTERNATIVE, TO STAY PROCEEDINGS

Pursuant to the first-to-file rule and 28 U.S.C. § 1404(a), Defendants National

Collegiate Athletic Association (NCAA), Big Ten Network, and The Big Ten

Conference, Inc. (hereinafter Defendants), by and through their respective

undersigned counsel, respectfully move the Court for entry of an Order transferring

this action to the United States District Court for the Southern District of New York

(SDNY), where it can proceed more efficiently alongside an earlier-filed action,

*Chalmers v. National Collegiate Athletic Association*, No. 1:24-cv-05008 (PAE),

that fully encompasses the claims raised here. In the alternative, pursuant to the first-

to-file rule, Defendants respectfully move the Court to stay proceedings in this

action, including all deadlines herein, while *Chalmers*, the first-filed action, proceeds to judgment in the SDNY.

Pursuant to Local Rule 7.1(a), the undersigned counsel certify that the parties have communicated regarding the relief sought in this Motion, and Plaintiffs do not concur in the requested relief.

WHEREFORE, Defendants respectfully request that the Court grant their Motion to Transfer Venue or, in the Alternative, to Stay Proceedings. A brief in support of Defendants' Motion is attached.

Dated:  January 13, 2025

By: */s/ Britt M. Miller*
Britt M. Miller (*pro hac vice*)
Daniel T. Fenske (*pro hac vice*)
Andrew S. Rosenman (*pro hac vice*)
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
bmiller@mayerbrown.com
dfenske@mayerbrown.com
arosenman@mayerbrown.com

*Counsel for The Big Ten Conference, Inc.*

By: */s/ Bradley R. Hutter*
* Bradley R. Hutter (MN 0396531)
**FAFINSKI MARK & JOHNSON, P.A.**
One Southwest Crossing
11095 Viking Drive, Suite 420

Respectfully submitted,

By: */s/ Rakesh Kilaru*
Rakesh Kilaru (*pro hac vice*)
Tamarra Matthews Johnson (*pro hac vice*)
Calanthe Arat (*pro hac vice*)
Matthew Skanchy (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
rkilaru@wilkinsonstekloff.com
tmatthewsjohnson@wilkinsonstekloff.com
carat@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

By: */s/ Jacob K. Danziger*
Jacob K. Danziger (P78634)
**ARENTFOX SCHIFF LLP**
350 S. Main Street, Suite 210
Ann Arbor, MI 48104
Telephone: (734) 222-1516
Facsimile: (734) 222-1501

Eden Prairie, MN 55344
(952) 995-9500
bradley.hutter@fmjlaw.com

* Attorney not admitted in this
District, co-signing under LR
83.20(i)(l)(D)(i). Attorney
application for admission pending.

Louis F. Ronayne (P81877)
Justin M. Wolber (P85728)
**VARNUM LLP**
39500 High Pointe Boulevard,
Suite 350
Novi, MI 48375
Telephone: (248) 567-7400
lfronayne@varnumlaw.com
jmwolber@varnumlaw.com

*Counsel for Big Ten Network*

jacob.danziger@afslaw.com

*Counsel for National Collegiate Athletic
Association*

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN

DENARD ROBINSON; BRAYLON
EDWARDS; MICHAEL MARTIN;
SHAWN CRABLE, Individually and on
behalf of themselves and former University
of Michigan football players similarly
situated,

        Plaintiffs,

v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION aka "NCAA"; BIG TEN
NETWORK aka "BTN"; and BIG TEN
CONFERENCE,

        Defendants.

Hon. Terrence G. Berg

Magistrate Judge Kimberly G.
Altman

Case No. 2:24-12355-TGB-KGA

ORAL ARGUMENT
REQUESTED

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

ISSUES PRESENTED ........................................................................ vi

RELEVANT AUTHORITIES ............................................................. vii

INTRODUCTION ............................................................................... 1

BACKGROUND ................................................................................. 2

I.     The *Chalmers* Action ............................................................... 2

II.    This Action ............................................................................... 4

ARGUMENT ..................................................................................... 6

I.     This Action Should Be Transferred to the SDNY Pursuant to the Interests of Judicial Comity and Economy Under the First-to-File Rule ....................................................................................... 7

       A.    Chronology of Events: *Chalmers* Was Filed First ........................ 8

       B.    Similarity of Parties: The *Chalmers* and *Robinson* Parties and Two Proposed Putative Classes Substantially Overlap .............. 9

       C.    Similarity of Issues and Claims: *Chalmers* and *Robinson* Advance Substantially Overlapping Factual Allegations and Federal Antitrust and Common Law Claims ........................... 12

II.    This Action Should Be Transferred to the SDNY Pursuant to the Interests of Justice and Convenience Under 28 U.S.C. § 1404(a) ........... 16

       A.    Transfer to the SDNY Accords with the Interests of Justice ......................................................................... 17

       B.    The SDNY Is the More Convenient Forum ................................... 19

              1.    Convenience of the Parties and Plaintiffs' Choice of Forum ........................................................... 20

i

2.    Convenience of the Witnesses, Access to Sources
      of Proof, and Locus of Operative Facts ...............................21

3.    Other Factors..........................................................................22

III.    In the Alternative, This Action Should Be Stayed to Allow
        *Chalmers*, the First-Filed Action, to Proceed to Judgment .......................22

CONCLUSION ...................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Baatz v. Columbia Gas Transmission, LLC*,
      814 F.3d 785 (6th Cir. 2016) ............................................................... *passim*

*Byler v. Air Methods Corp.*,
      No. 1:17-cv-236, 2017 WL 10222371 (N.D. Ohio Aug. 30, 2017) ...... *passim*

*Carson Real Estate Cos., LLC v. Constar Grp., Inc.*,
      No. 10-cv-13966, 2011 WL 4360017 (E.D. Mich. Sept. 19, 2011). 17, 19, 20

*Colosimo v. Hitchai Home Elecs. (Am.), Inc.*,
      No. 11-12182, 2011 WL 4445840 (E.D. Mich. Sept. 26, 2011)...................22

*Cont'l Grain Co. v. The FBL-585*,
      364 U.S. 19 (1960)................................................................................ 17, 19

*Cook v. E.I. DuPont de Nemours & Co.*,
      No. 3:17-cv-00909, 2017 WL 3315637 (M.D. Tenn. Aug. 3, 2017).... *passim*

*Cook v. Equifax Info. Servs. LLC*,
      No. 16-14508, 2017 WL 8186824 (E.D. Mich. June 30, 2017)...................21

*Danner v. NextGen Leads, LLC*,
      No. 22-cv-11498, 2023 WL 2016818 (E.D. Mich. Feb. 15, 2023)........ 14, 15

*Danuloff v. Color Ctr.*,
      No. 93-cv-73478, 1993 WL 738578 (E.D. Mich. Nov. 22, 1993)................22

*Echard v. Wells Fargo Bank N.A.*,
      No. 2:21-cv-5080, 2023 WL 2522839 (S.D. Ohio Mar. 15, 2023)........ 22, 23

*Elite Physicians Servs., LLC v. Citicorp Credit Servs., Inc. (USA)*,
      No. 1:06-CV-86, 2007 WL 1100481 (E.D. Tenn. Apr. 11, 2007)......... 11, 12

*Emps. Ret. Sys. of City of St. Louis v. Jones*,
      No. 2:20-cv-04813, 2020 WL 7487839 (S.D. Ohio Dec. 21, 2020).. 8, 23, 24

*Fox v. Massey-Ferguson, Inc.*,
      No. 93-cv-74615, 1995 WL 307485 (E.D. Mich. Mar. 14, 1994) ......... 20, 21

## Cases (cont.)

*Graessle v. Nationwide Credit Inc.*,
    No. 06-cv-00483, 2007 WL 894837 (S.D. Ohio Mar. 22, 2007) .................11

*Honaker v. Wright Bros. Pizza, Inc.*,
    No. 18-cv-1528, 2019 WL 4316797 (S.D. Ohio Sept. 11, 2019) .......... 14, 15

*Hubbard v. Papa John's Int'l, Inc.*,
    No. 5:19-cv-22, 2019 WL 6119242 (W.D. Ky. Nov. 18, 2019) ........... 23, 24

*Huellemeier v. Teva Pharm. Indus. Ltd.*,
    No. 1:17-cv-485, 2017 WL 5523149 (S.D. Ohio Nov. 17, 2017).......... 11, 12

*Intermed Res. TN, LLC v. Camber Spine, LLC*,
    No. 3:22-cv-00850, 2023 WL 8284371 (M.D. Tenn. Nov. 30, 2023).. *passim*

*Int'l Show Car Ass'n v. Am. Soc'y of Composers, Authors & Publishers*,
    806 F. Supp. 1308 (E.D. Mich. 1992) ..................................................... 17, 18

*Just Intellectuals, PLLC v. Clorox Co.*,
    No. 10-12415, 2010 WL 5129014 (E.D. Mich. Dec. 10, 2010)...................22

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
    330 U.S. 518 (1947)...................................................................................20

*NCR Corp. v. First Fin. Computer Servs., Inc.*,
    492 F. Supp. 2d 864 (S.D. Ohio 2007)........................................................7

*Overland, Inc. v. Taylor*,
    79 F. Supp. 2d 809 (E.D. Mich. 2000) ......................................................16

*Parks v. Procter & Gamble Co.*,
    No. 1:21-cv-258, 2022 WL 788795 (S.D. Ohio Mar. 15, 2022)............ 24, 25

*Phelps v. McClellan*,
    30 F.3d 658 (6th Cir. 1994) .......................................................................16

*Sacklow v. Saks Inc.*,
    377 F. Supp. 3d 870 (M.D. Tenn. 2019) ............................................... 20, 22

*Sharma v. Pandey*,
    No. 07-cv-13508, 2007 WL 4571817 (E.D. Mich. Dec. 27, 2007) .............25

**Cases (cont.)**

*Sloan v. BorgWarner Diversified Transmission Prods. Inc.*,
　　No. 06-cv-10861, 2006 WL 1662634 (E.D. Mich. June 9, 2006).... 17, 20, 21

*Smith v. SEC*,
　　129 F.3d 356 (6th Cir. 1997) ........................................................... 12, 22, 23

*Wayne Cnty. Emps.' Ret. Sys. v. MGIC Inv. Corp.*,
　　604 F. Supp. 2d 969 (E.D. Mich. 2009) ......................................................19

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*,
　　16 F. App'x 433 (6th Cir. 2001)........................................................... *passim*

**Statutes**

28 U.S.C. § 1404(a) .......................................................................... *passim*

**Rules**

Fed. R. Civ. P. 45 ......................................................................................22

**Other Authorities**

15 Charles Alan Wright et al.., Federal Practice & Procedure § 3854
　　(3d ed. 2007)......................................................................................17

Am. Compl., *Chalmers v. NCAA*,
　　No. 1:24-cv-05008 (PAE) (S.D.N.Y. Nov. 14, 2024), ECF No. 104.... *passim*

Compl., *Chalmers v. NCAA*,
　　No. 1:24-cv-05008 (PAE) (S.D.N.Y. July 1, 2024), ECF No. 1 ........... *passim*

Manual for Complex Litigation (Fourth) § 21.15 at 263–64 (2004)................ 18, 19

## ISSUES PRESENTED

1.      Whether this action should be transferred to the Southern District of New York pursuant to the interests of judicial comity and economy under the first-to-file rule where *Chalmers v. National Collegiate Athletic Association*, No. 1:24-cv-05008 (PAE), was filed first?

2.      Whether this action should be transferred to the Southern District of New York pursuant to the interests of justice and convenience under 28 U.S.C. § 1404(a) where there is a risk of multiplicity of litigation, inconsistent rulings, inefficient use of judicial and party resources, and duplicative recoveries from allowing this action and *Chalmers* to proceed simultaneously?

3.      Whether, in the alternative to transfer, this action should be stayed under the first-to-file rule to allow *Chalmers* to proceed to judgment where *Chalmers* was filed first?

# RELEVANT AUTHORITIES

The controlling or most appropriate authority supporting this Motion includes:

- *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785 (6th Cir. 2016)

- *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433 (6th Cir. 2001)

- *Smith v. SEC*, 129 F.3d 356 (6th Cir. 1997)

- *Intermed Res. TN, LLC v. Camber Spine, LLC*, No. 3:22-cv-00850, 2023 WL 8284371 (M.D. Tenn. Nov. 30, 2023)

- *Parks v. Procter & Gamble Co.*, No. 1:21-cv-258, 2022 WL 788795 (S.D. Ohio Mar. 15, 2022)

- *Byler v. Air Methods Corp.*, No. 1:17-cv-236, 2017 WL 10222371 (N.D. Ohio Aug. 30, 2017)

- *Cook v. E.I. DuPont de Nemours & Co.*, No. 3:17-cv-00909, 2017 WL 3315637 (M.D. Tenn. Aug. 3, 2017)

- *Carson Real Estate Cos., LLC v. Constar Grp., Inc.*, No. 10-cv-13966, 2011 WL 4360017 (E.D. Mich. Sept. 19, 2011)

- *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809 (E.D. Mich. 2000)

- *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19 (1960)

- 28 U.S.C. § 1404(a)

## INTRODUCTION

This is a copycat case. Its claims are fully encompassed by *Chalmers v. National Collegiate Athletic Association*, No. 1:24-cv-05008 (S.D.N.Y.) (Engelmayer, J.), a substantively identical class action filed months earlier. Here, as in *Chalmers*, a group of former student-athletes seeks to represent a proposed class of former student-athletes whose name, image, or likeness (NIL) has allegedly been used or misappropriated for commercial purposes by Defendants. Here, as in *Chalmers*, Plaintiffs challenge the same underlying NCAA policies that allegedly prevented—and supposedly continue to prevent—the putative class members from monetizing their NIL. Here, as in *Chalmers*, Plaintiffs seek injunctive relief and damages. In short, the classes, the claims, and the relief sought are identical between this case and *Chalmers*.

This case should accordingly be transferred to the Southern District of New York (SDNY) under both the first-to-file rule and 28 U.S.C. § 1404(a). The first-to-file analysis is simple: *Chalmers* was filed first, and the parties and issues "in the two actions substantially overlap," *Baatz v. Columbia Gas Transmission*, 814 F.3d 785, 789–90 (6th Cir. 2016) (cleaned up, citation omitted), such that "the court in which the first suit was filed should generally proceed to judgment," *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001) (citation omitted). The analysis under Section 1404(a) is equally straightforward,

because the interests of justice favor transfer. Having the same issues litigated at the same time in two courts makes no sense as a matter of judicial economy and efficiency, risks multiple conflicting rulings on the same issues, and allows the putative class members to get multiple bites at the same apple (and potentially duplicative recoveries in the unlikely event of a win). At minimum, the Court should grant a stay under the first-to-file doctrine to preserve judicial comity and minimize these serious harms.

## BACKGROUND

### I.    The *Chalmers* Action

On July 1, 2024, over two months before this lawsuit was filed, a group of former NCAA student-athletes filed a putative class action in the SDNY on behalf of themselves and "[a]ll persons who were NCAA student-athletes prior to June 15, 2016, whose image or likeness has been used in any video posted by or licensed by the NCAA" or others. Compl., *Chalmers v. NCAA*, No. 1:24-cv-05008 (PAE) (S.D.N.Y. July 1, 2024) (*Chalmers* Compl.), ECF No. 1, ¶ 113. The *Chalmers* complaint alleges that the NCAA, its member conferences, and other third parties violated federal antitrust and common law through NCAA rules barring compensation to student-athletes for their purported NIL rights, and by using video footage and images from the named plaintiffs' and similarly situated class members' years as student-athletes in commercial broadcasts to generate revenue without their

consent and without compensation. *See, e.g.*, *id.* ¶¶ 2, 6–7, 105–09. On November 14, 2024, the *Chalmers* plaintiffs amended their complaint, but the substance of the purported class definition, legal claims, and factual allegations remains the same. *See* Am. Compl., *Chalmers v. NCAA*, No. 1:24-cv-05008 (PAE) (S.D.N.Y. Nov. 14, 2024) (*Chalmers* Am. Compl.), ECF No. 104.[1]

The *Chalmers* plaintiffs ground their claims in the central allegation that the NCAA "coerced [them] into signing a contract"—the Student-Athlete Statement—each academic year before their athletic season began that "stripped them of their legal rights" and granted the NCAA and others "a license in perpetuity" for "uncompensated use of [their] names, images, likenesses, and footage, long after [they] have left school." *Id.* ¶¶ 124, 148–49; *see also id.* ¶¶ 56, 120–30; *Chalmers* Compl., ECF No. 1, ¶¶ 66–72, 110–11. As a result, they claim the *Chalmers* defendants have violated Sections 1 and 2 of the Sherman Act and have been unjustly enriched, and that they should be entitled to declaratory and injunctive relief and monetary compensation. *Chalmers* Am. Compl., ECF No. 104, ¶¶ 11–12, 154–56, 165, 172–93; *Chalmers* Compl., ECF No. 1, ¶¶ 114–15, 138–89. The NCAA and other defendants filed their motion to dismiss in *Chalmers* on December 2, 2024,

_____

[1] The amended complaint defines the *Chalmers* putative class as "[a]ll individual persons who were NCAA student-athletes prior to June 15, 2016, whose image, likeness, or footage has been used or licensed for commercial purposes by the NCAA" and others. *Chalmers* Am. Compl., ECF No. 104, ¶ 153.

and the SDNY scheduled oral argument for January 27, 2025.

## II.    This Action

Plaintiffs are four former student-athletes who played for the University of Michigan's Division I men's football program prior to 2016. Am. Compl., ECF No. 24, PageID.219–22. Mirroring, often verbatim, the *Chalmers* complaint, Plaintiffs filed this lawsuit against the NCAA and Big Ten Network (BTN) on September 10, 2024. While Plaintiffs claim to sue "on behalf of all former University of Michigan Football players who played prior to 2016" and to "represent[] a Class of similarly situated former University of Michigan football players," their class definition is much broader: "[a]ll persons who were NCAA student-athletes prior to June 15, 2016, whose image or likeness has been used in any video posted by or licensed by the NCAA, [BTN], or [others]." Compl., ECF No. 1, PageID.35, ¶ 77; *see also* Plfs.' Mot. for Class Certification, ECF No. 29, PageID.361, ¶ 1. Regardless, all of the named plaintiffs and purported class members in this case are members of the claimed *Chalmers* class. On December 3, 2024, Plaintiffs filed an amended complaint, maintaining the same broad class definition and murky references to representing former University of Michigan football players, Am. Compl., ECF No. 24, PageID.218; 234, ¶ 33; 257, ¶ 88, and adding claims against The Big Ten Conference, Inc. (Big Ten*), see id.*, PageID.223, ¶ 7; 237, ¶ 42.

The Amended Complaint also raises the same underlying factual allegations

and nearly identical legal claims to those advanced in *Chalmers*. *Compare, e.g.*, Am. Compl. ECF No. 24, PageID.230–46, ¶¶ 22–63; 249–50, ¶¶ 69–71; 253–56, ¶¶ 77–80, 82–86, *with Chalmers* Am. Compl., ECF No. 104, ¶¶ 6–12, 108–33, 139–49, 155, *and Chalmers* Compl., ECF No. 1, ¶¶ 52–78, 104–11. Indeed, Plaintiffs' attorneys repeatedly copied-and-pasted from the *Chalmers* complaint. *Compare, e.g.*, Am. Compl., ECF No. 24, PageID.231, ¶ 23, *with Chalmers* Compl., ECF No. 1, ¶ 9; Am. Compl., ECF No. 24, PageID.242, ¶ 54, *with Chalmers* Compl., ECF No. 1, ¶ 52; Am. Compl., ECF No. 24, PageID.232, ¶ 27; 21–22, ¶ 43, *with Chalmers* Compl., ECF No. 1, ¶ 59; Am. Compl., ECF No. 24, PageID.258–59, ¶ 95(a)–(i), *with Chalmers* Compl., ECF No. 1, ¶ 120(a)–(i); Am. Compl., ECF No. 24, PageID.297, ¶¶ 5, 8–9, *with Chalmers* Am. Compl., ECF No. 104, ¶ 12.

Similar to the *Chalmers* plaintiffs, Plaintiffs allege that Defendants violated federal antitrust law and common law through NCAA rules barring compensation to student-athletes for their purported NIL rights, and by using and licensing "images and videos of Plaintiffs and similarly situated Class Members to advertise for their commercial purposes without the athletes' consent and while paying them nothing." Am. Compl. ECF No. 24, PageID.228–29, ¶ 19; *see also id.*, PageID.233, ¶ 29; 234, ¶ 33; 238–39, ¶ 45. They too "ground[]" their claims in the central allegation that the NCAA coerced student-athletes to sign a Student-Athlete Statement contract that purportedly "requir[ed] them to cede their rights to their [NIL]" and granted

Defendants a "perpetual license" to "appropriat[e] those [publicity] rights without compensation" beyond the end of their collegiate careers. *Id.*, PageID.230, ¶ 22; 231, ¶ 24; 232, ¶ 27; 240, ¶ 48; 242, ¶ 54; 244, ¶ 58, 254, ¶ 80. Akin to *Chalmers*, Plaintiffs claim that Defendants have engaged in an unreasonable restraint of trade, group boycott/refusal to deal, and conspiracy to restrain trade in violation of Section 1 of the Sherman Act (Counts I, II, and III), and have also been unjustly enriched by the uncompensated use of their NIL (Count IV). *Id.*, PageID.267–90, ¶¶ 116–88. They too are seeking declaratory and injunctive relief, as well as monetary damages. *Id.*, PageID.234–35, ¶¶ 34–36; 296–97.

On December 17, 2024, upon consent of the parties, the Court extended Defendants' deadline to respond to the Complaint through January 13, 2025. *See* ECF No. 33, Page ID.421. To date, the parties have not proposed a case management schedule or taken any discovery.

## ARGUMENT

Two months after *Chalmers* was filed, Plaintiffs' counsel brought the present action with the same factual allegations and nearly identical federal antitrust and common law claims, on behalf of a putative class of individuals wholly encompassed by the putative class in *Chalmers*. Transferring this action to the SDNY pursuant to

the first-to-file rule and/or 28 U.S.C. § 1404(a),[2] or, in the alternative, staying proceedings while *Chalmers*, the first-filed action, proceeds to judgment, would protect the parties and the courts from conflicting rulings, conserve judicial resources by minimizing duplicative litigation, encourage "comity among federal courts of equal rank," and promote the convenience of the parties and witnesses and the interests of justice. *Baatz*, 814 F.3d at 789; *see also Zide*, 16 F. App'x at 437.

## I.     This Action Should Be Transferred to the SDNY Pursuant to the Interests of Judicial Comity and Economy Under the First-to-File Rule

Transfer to the SDNY accords with the first-to-file rule, "a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts[,]" *Baatz*, 814 F.3d at 789, and requires courts to focus "on comity and economy between courts with cases that have substantially similar issues," *Cook*, 2017 WL 3315637, at *3. The first-to-file rule provides that "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Zide*, 16 F. App'x at 437 (citation omitted). Perfect identity of the parties is not required:

---

[2] A motion to transfer venue under 28 U.S.C. § 1404(a) "is distinct from a motion to transfer under the first-to-file doctrine," *Cook v. E.I. DuPont de Nemours & Co.*, No. 3:17-cv-00909, 2017 WL 3315637, at *3 (M.D. Tenn. Aug. 3, 2017), as the former "asks a court to transfer a proceeding for the convenience of the parties, whereas the latter is a doctrine rooted in judicial comity," *NCR Corp. v. First Fin. Computer Servs., Inc.*, 492 F. Supp. 2d 864, 868 (S.D. Ohio 2007).

"The first-to-file rule applies when the parties in the two actions substantially overlap, even if they are not perfectly identical." *Baatz*, 814 F.3d at 790 (cleaned up). Courts have discretionary power to apply the rule, and "generally evaluate three factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Baatz*, 814 F.3d at 789.

There is no doubt that (1) this action could have been brought in the SDNY given that Plaintiffs are asserting federal antitrust claims on behalf of a nationwide class,[3] and (2) all three first-to-file factors are satisfied. Accordingly, the Court should apply the first-to-file rule and transfer this action to the SDNY.

## A.  Chronology of Events: *Chalmers* Was Filed First

To resolve the chronology of events factor of the first-to-file rule, the Court must "look[] to the filing dates of the complaints" of the overlapping cases to determine which case was filed first. *Emps. Ret. Sys. of City of St. Louis v. Jones*, No. 2:20-cv-04813, 2020 WL 7487839, at *2 (S.D. Ohio Dec. 21, 2020) (citing *Baatz*, 814 F.3d at 790). It is indisputable that *Chalmers* was the first-filed action, as the *Chalmers* complaint was filed in the SDNY on July 1, 2024, and the Complaint in this action was filed over two months later on September 10, 2024. *Compare*

---

[3] It is a "threshold issue" in a motion to transfer "whether the proposed venue is a district where th[e] action 'might have been brought.'" *Intermed Res. TN, LLC v. Camber Spine, LLC*, No. 3:22-cv-00850, 2023 WL 8284371, at *2 (M.D. Tenn. Nov. 30, 2023) (quoting 28 U.S.C. § 1404(a)).

*Chalmers* Compl., ECF No. 1, *with* Compl., ECF No. 1.[4]

**B.     Similarity of Parties: The *Chalmers* and *Robinson* Parties and Two Proposed Putative Classes Substantially Overlap**

The second element of the first-to-file rule is met "when the parties in the two actions substantially overlap, even if they are not perfectly identical." *Baatz*, 814 F.3d at 790 (cleaned up); *see also Intermed Res. TN, LLC v. Camber Spine, LLC*, No. 3:22-cv-00850, 2023 WL 8284371, at *3 (M.D. Tenn. Nov. 30, 2023) ("[T]he first-to-file rule considers the similarity of the parties, it does not require complete identity."). To serve the first-to-file rule's purposes of conserving judicial resources and preventing inconsistent rulings, particularly with "potentially overlapping class actions," the Court "must evaluate the identity of the parties by looking at overlap with the putative class[es]" even if "the class[es] ha[ve] not yet been certified." *See Baatz*, 814 F.3d at 790–91 ("Perhaps the most important purpose of the first-to-file rule is to conserve resources by limiting duplicative [class action] cases."); *see also Cook*, 2017 WL 3315637, at *3 ("The first-to-file rule in a class action suit requires the court to compare the proposed classes, not the named plaintiffs."

There is no question that Plaintiffs' proposed class substantially overlaps with the putative class in *Chalmers*. The class definition sections of both complaints are

---

[4] This analysis does not change even though the *Chalmers* plaintiffs amended their complaint on November 14, 2024. *See Zide*, 16 F. App'x at 437 ("For purposes of first-to-file chronology, the date that an original complaint is filed controls.").

essentially identical. The original *Chalmers* complaint defines the putative class as:

> All persons who were NCAA student-athletes prior to June 15, 2016, whose image or likeness has been used in any video posted by or licensed by the NCAA, the Conferences, . . . or their agents, distributors, contractors, licensees, subsidiaries, affiliates, partners or anyone acting in concert with any of the foregoing entities or persons.

*Chalmers* Compl., ECF No. 1, ¶ 113. Copying almost verbatim this class definition, the complaint in *Robinson* defines the purported class as:

> All persons who were NCAA student-athletes prior to June 15, 2016, whose image or likeness has been used in any video posted by or licensed by the NCAA, Big Ten Network, or their agents, distributors, contractors, licensees, subsidiaries, affiliates, partners, or anyone acting in concert with any of the foregoing entities or persons.

Am. Compl., ECF No. 24, PageID.257, ¶ 88. And the amended complaint in *Chalmers* changed this definition only slightly to all such student-athletes "whose image, likeness, or footage has been used or licensed for commercial purposes by the NCAA, the Conferences" and others. *Chalmers* Am. Compl., ECF No. 104, ¶ 153. Thus, the putative class definitions in this case and *Chalmers* are completely overlapping, making each plaintiff in this case a member of the proposed class in *Chalmers*. And in this circuit, "where the transferor court's class is included in the transferee court's class, the plaintiffs substantially overlap, even if the transferee court's class has 'additional members.'" *Byler v. Air Methods Corp.*, No. 1:17-cv-236, 2017 WL 10222371, at *3 (N.D. Ohio Aug. 30, 2017) (quoting *Baatz*, 814 F.3d at 790–91); *see also Baatz*, 814 F.3d at 790–91 ("[W]hat matters for our purposes is

that [the transferor court's plaintiffs] would be parties to both actions.").[5]

There are also only slight differences in the named defendants. Plaintiffs name the NCAA, BTN, and the Big Ten, whereas *Chalmers* names the NCAA and six Division I athletic conferences (including the Big Ten). Most importantly, the NCAA is a defendant in both cases. Given that the *Chalmers* claims and the claims here are centered on challenges to longstanding NCAA practices, the presence of the NCAA as a defendant in both cases alone shows substantial overlap. *See, e.g., Graessle v. Nationwide Credit Inc.*, No. 06-cv-00483, 2007 WL 894837, at *4 (S.D. Ohio Mar. 22, 2007) (concluding that an additional defendant did not negate the first-to-file rule because the presence of a key defendant in both cases enabled "the primary issue in each case [to be] substantially similar").

Although BTN is the only defendant here not subsumed in *Chalmers*, the Big Ten Conference owns a minority interest in BTN. *See* Am. Compl., ECF No. 24, PageID.223, ¶ 7; 245, ¶ 61. Because courts hold that "affiliation between/among defendants is sufficient to find 'substantial overlap'" for purposes of evaluating party identity in transfer motions, *Elite Physicians Servs., LLC v. Citicorp Credit Servs.,*

---

[5] Even if Plaintiffs' purported class is limited to "former University of Michigan football players" as they sometimes allege in the Complaint, *see* Am. Compl., ECF No. 24, PageID.218; 234, ¶ 33; 242, ¶ 53; 255, ¶ 82, it would be fully subsumed in the larger, more inclusive and overlapping *Chalmers* class, *see Byler*, 2017 WL 10222371, at *3 (finding it "of no consequence" that the transferor court's "putative class is narrower than the class in the [transferee court]").

*Inc. (USA)*, No. 1:06-CV-86, 2007 WL 1100481, at *3–4 (E.D. Tenn. Apr. 11, 2007) (citations omitted), the Court has sufficient basis to conclude that the parties "are similar enough . . . to make transfer appropriate," *Huellemeier v. Teva Pharm. Indus. Ltd.*, No. 1:17-cv-485, 2017 WL 5523149, at *5 (S.D. Ohio Nov. 17, 2017). After all, substantial overlap, not perfect identity, of parties is all that is required. *Baatz*, 814 F.3d at 790.

### C.   Similarity of Issues and Claims: *Chalmers* and *Robinson* Advance Substantially Overlapping Factual Allegations and Federal Antitrust and Common Law Claims

The first-to-file rule's final factor of consideration is the similarity of the issues or claims at stake, and "as with the similarity of the parties factor, the issues need only [ ] substantially overlap." *Baatz*, 814 F.3d at 791. The issues and claims "need not be identical, but they must 'be materially on all fours' and have such an identity that a determination in one action leaves little or nothing to be determined in the other.'" *Id.* (quoting *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997)).

It is indisputable that the factual and legal claims at issue in this case are substantially similar to those in *Chalmers*. Both cases rest on the same core factual allegations relating to NCAA rules and the NCAA's and others' use of archival images and footage of prior student-athletes without their consent or compensation. *Compare* Am. Compl., ECF No. 24, PageID.230, ¶ 22; 232, ¶ 27; 240–44, ¶¶ 48–59; 273, ¶ 135, *with Chalmers* Am. Compl., ECF No. 104, ¶¶ 49, 56, 64, 66–82, *and*

*Chalmers* Compl., ECF No. 1, ¶¶ 7, 105–09. And both cases' claims stem from the central allegation that NCAA rules purportedly require student-athletes to sign an alleged contract assigning their supposed NIL rights to the NCAA "in perpetuity." *Compare* Am. Compl., ECF No. 24, PageID.230, ¶ 22; 279, ¶ 157, *with Chalmers* Am. Compl., ECF No. 104, ¶¶ 56, 120–30, *and Chalmers* Compl., ECF No. 1, ¶¶ 7, 105–09, 66–72, 132–34. As a result, the factual controversies that will be litigated in this action are identical to those that will be litigated in *Chalmers*.

In addition, both actions allege nearly identical federal antitrust and common law claims. Plaintiffs have alleged unreasonable restraint of trade, group boycott/refusal to deal, and conspiracy to restrain trade in violation of Section 1 of the Sherman Act, and unjust enrichment in violation of common law. Am. Compl., ECF No. 24, PageID.267–90, ¶¶ 116–88. Similarly, the *Chalmers* plaintiffs have alleged unreasonable restraint of trade and group boycott/refusal to deal in violation of Section 1 of the Sherman Act and an unjust enrichment claim. *Chalmers* Compl., ECF No. 1, ¶¶ 137–89; *Chalmers* Am. Compl., ECF No. 104, ¶¶ 172–93.[6] Due to these overlapping legal claims, the "common questions of law and fact" advanced for both putative classes are the same. *Compare* Am. Compl., ECF No. 24,

---

[6] The *Chalmers* amended complaint adds a claim of monopolization in violation of Section 2 of the Sherman Act. But that only strengthens the case for transfer, because *Chalmers* is, if anything, the broader case.

PageID.258–59, ¶ 95(a)–(i), *with Chalmers* Compl., ECF No. 1, ¶ 120(a)–(i) (for example, both posing questions of "[w]hether Defendants violated Section I of the Sherman Act," "have been unjustly enriched," and "caused injury to Plaintiffs and the Class"). And the amended *Chalmers* complaint changes nothing by adding two new "common questions" to this list, because those additions merely derive from the same set of factual allegations centering on the Student-Athlete Statement and legal issues here. *Chalmers* Am. Compl., ECF No. 104, ¶ 161(i)–(j).[7]

The relief sought is also substantially similar. Both sets of plaintiffs seek monetary damages, injunctive relief, and identical declarations from the Court that "any assignment of publicity rights under the circumstances in which the NCAA presents its required waiver to students is unlawful and unenforceable." *See* Am. Compl., ECF No. 24, PageID.286, ¶ 178; *Chalmers* Am. Compl., ECF No. 104 at 69; *Chalmers* Compl., ECF No. 1, ¶ 178. Although Plaintiffs have enumerated a specific set of alleged "damages incurred" from Defendants' conduct, *see* Am. Compl., ECF No. 24, PageID.290–96, ¶ 190(a)–(t), that does not change the analysis,

_____

[7] The two new "common questions of law and fact" in the amended *Chalmers* complaint are: "Whether Plaintiffs and the Class are co-owners of the relevant footage in which they are featured" and "Whether Plaintiffs and the Class are entitled to an accounting for the use of the footage in which they are featured." *Chalmers* Am. Compl., ECF No. 104, ¶ 161(i)–(j). Both questions deal with the same subject matter of this action, namely the defendants' use of video footage from the plaintiffs' and class members' time as student-athletes and containing their NIL.

because "[t]he presence of additional issues does not necessarily preclude a finding of substantial similarity where the core claim is the same," *Honaker v. Wright Bros. Pizza, Inc.*, No. 18-cv-1528, 2019 WL 4316797, at *4 (S.D. Ohio Sept. 11, 2019) (citations omitted); *see also Danner v. NextGen Leads, LLC*, No. 22-cv-11498, 2023 WL 2016818, at *4 (E.D. Mich. Feb. 15, 2023) (concluding that the presence of only one "non-identical claim aris[ing] from the same section of the same statute" did not negate "substantial overlap between the issues").

Because "[b]oth actions raise the same claims under the same laws using the same theory of the case [and b]oth cases seek damages, as well as declaratory and injunctive relief[,]" the similarity-of-the-issues factor of the first-to-file rule is satisfied. *Baatz*, 814 F.3d at 792; *see also Byler*, 2017 WL 10222371, at *4 (concluding that there was sufficient overlap of the issues where the causes of action between the two cases were "identical" and the plaintiffs in both cases sought "similar forms of relief"); *Intermed*, 2023 WL 8284371, at *3 (granting transfer where the claims "ar[o]se out of the same agreement between the parties").

Due to the clear chronology of events making *Chalmers* the first-filed action, the substantial overlap of the two actions' parties and putative classes, the close identity of their factual claims and legal issues, and *Chalmers*' "potential to completely resolve" the present action, the Court should find that concerns of "judicial consistency, economy, and comity" warrant application of the first-to-file

rule here and should grant Defendants' motion to transfer on this basis. *Cook*, 2017 WL 3315637, at *6; *Baatz*, 814 F.3d at 790.

## II.   This Action Should Be Transferred to the SDNY Pursuant to the Interests of Justice and Convenience Under 28 U.S.C. § 1404(a)

Transfer to the SDNY also accords with 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" The Court has "broad discretion" to grant a Section 1404(a) motion, *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994), and its decision must be guided by the following transfer factors:

> (1) the convenience of witnesses; (2) the location of relevant documents and relevant relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000) (citation omitted).

After considering the interests of justice—including the risk of inconsistent rulings and an inefficient use of judicial and party resources—and the convenience factors under Section 1404(a), the Court should conclude that "fairness and practicality strongly favor" transfer of this action to the SDNY. *Sloan v. BorgWarner*

*Diversified Transmission Prods. Inc.*, No. 06-cv-10861, 2006 WL 1662634, at *3 (E.D. Mich. June 9, 2006) (citation omitted).

### A.   Transfer to the SDNY Accords with the Interests of Justice

The "'interest of justice factor' . . . , which is to be 'considered on its own,'" and is often viewed as the most "important" and "decisive" factor that "outweigh[s] the other statutory factors . . . even [where] the convenience of the parties and witnesses [might] point[] in a different direction." *Carson Real Estate Cos., LLC v. Constar Grp., Inc.*, No. 10-cv-13966, 2011 WL 4360017, at *8–9 (E.D. Mich. Sept. 19, 2011) (quoting 15 Charles Alan Wright et al.., Federal Practice & Procedure § 3854 at 246–47 (3d ed. 2007)). Particularly, it is in the interests of justice to transfer a suit to "prevent multiplicity of litigation as a result of a single transaction or event," *id.* (citation and internal quotation marks omitted), and in "a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts," *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960); *see also Carson Real Estate*, 2011 WL 4360017, at *9–10 (grouping the application of the first-to-file rule with "the interest of justice [factor] pursuant to § 1404(a)").

For all the reasons discussed above, there is no question that this action and the first-filed *Chalmers* action involve substantially similar and overlapping parties and putative classes, factual allegations, legal issues, and claims for relief. Given the duplicative nature of these suits, there is a high risk of inconsistent rulings at each

step of litigation, including class certification, motion to dismiss, and other dispositive motion rulings,[8] as well as pretrial rulings and trial outcomes. The same inconsistency risks apply to discovery, as it would be far more efficient for discovery in these overlapping and complex antitrust class actions to be conducted in a single district governed by the same local rules rather than by two different courts. *See Int'l Show Car Ass'n v. Am. Soc'y of Composers, Authors & Publishers*, 806 F. Supp. 1308, 1314–15 (E.D. Mich. 1992) (transferring an action to the SDNY to "promote uniform decision-making in th[e] complex field" of antitrust litigation).

Similarly, maintaining these related actions in two different districts would waste both party and judicial resources, for example by requiring all the overlapping parties to engage in duplicative discovery and dispositive motion briefings. This inefficient use of resources is only more prominent in the context of class actions, where "coordination among the judges handling the cases may be critical" to avoid conflicting rulings or "duplicative work and expense," Manual for Complex Litigation (Fourth) § 21.15 at 263–64 (2004), and particularly in the case of these two putative class actions, which propose functionally equivalent class definitions

---

[8] For example, at the motion to dismiss stage, both this Court and the SDNY could make inconsistent findings regarding Defendants' planned arguments for dismissal under the statute of limitations and preemption under the Copyright Act, including their treatment of the at-issue right of publicity claims under two states' differing laws. Any such inconsistent rulings would send this case and *Chalmers* down diverging pathways despite their substantial overlap in parties, claims, and issues.

and intersecting common questions of law and fact, *compare* Am. Compl., ECF No. 24, PageID.257–59, ¶¶ 88, 95(a)–(i), *with Chalmers* Am. Compl., ECF No. 104, ¶¶ 153, 161(a)–(j), *and Chalmers* Compl., ECF No. 1, ¶¶ 113, 120(a)–(i). *See Wayne Cnty. Emps.' Ret. Sys. v. MGIC Inv. Corp.*, 604 F. Supp. 2d 969, 977 (E.D. Mich. 2009) ("There can be no dispute that to allow two separate district courts . . . to address almost identical causes of action involving identical issues in class actions whose members overlap[] would be an inefficient use of judicial resources." (citation omitted)).

In light of the substantial overlap between this case and *Chalmers* and in the interests of justice, the Court should find that transfer is warranted so as to prevent "the wastefulness of time, energy and money that [§] 1404(a) was designed to prevent." *Cont'l Grain Co.*, 364 U.S. at 26.

## B.    The SDNY Is the More Convenient Forum

Although the convenience factors are "somewhat eclipsed by the pendency of earlier-filed litigation involving the same parties and the same subject matter" pursuant to the first-to-file rule, *Intermed*, 2023 WL 8284371, at *2, and by the "decisive" importance of "the interest of justice" factor, they too strongly support transferring this case to the SDNY, *see Carson*, 2011 WL 4360017, at *8–10 (granting the defendants' motion to transfer after concluding that there was "no significant inconvenience [based on the Section 1404(a) factors] that would override

19

the preference the law establishes for the forum of the first-filed action").

### 1.    Convenience of the Parties and Plaintiffs' Choice of Forum

While the four named plaintiffs chose this forum, their choice, in seeking to represent a nationwide class, "is not sacrosanct," *Sloan*, 2006 WL 1662634, at *4; *see, e.g.*, *Fox v. Massey-Ferguson, Inc.*, No. 93-cv-74615, 1995 WL 307485, at *2 (E.D. Mich. Mar. 14, 1994) ("[I]nasmuch as this is a class action law suit[,] plaintiffs' choice of forum is less important."); *Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 878 (M.D. Tenn. 2019) (according less deference in class actions to a plaintiff's choice of venue "because class members are frequently not limited to residents of any particular state"). Plaintiffs allege that the putative class in this case "contains thousands of members," Am. Compl., ECF No. 24, PageID.258, ¶ 94, and "[w]here there are [thousands] of potential plaintiffs, . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his [or her] home forum is considerably weakened," *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947). Thus, the decision of only four named plaintiffs to file in this forum out of the "thousands" allegedly affected does not weigh against transfer.

Relatedly, "[p]laintiffs, *as a class*, will be equally inconvenienced whether this case is tried in this District or the [SDNY,]" but Defendants, "on the other hand, will be greatly inconvenienced if this case were to proceed in this District." *Fox*,

1995 WL 307485, at *2 (emphasis added). Neither the NCAA, the Big Ten, nor BTN is headquartered in Michigan, and the NCAA is an unincorporated association with more than 1,100 member institutions that are dispersed across the United States. Am. Compl., ECF No. 24, PageID.222, ¶ 6. Given Defendants' geographic diversity of operations, it would be most convenient to transfer this case to the SDNY so that they need only litigate the overlapping factual and legal issues once in *Chalmers*.

### 2.   Convenience of the Witnesses, Access to Sources of Proof, and Locus of Operative Facts

Because this is a countrywide putative class action, there is no "center of gravity" for the facts, relevant documents, or third-party witnesses counseling in favor of keeping this case in Plaintiffs' chosen forum. *Cook v. Equifax Info. Servs. LLC*, No. 16-14508, 2017 WL 8186824, at *3 (E.D. Mich. June 30, 2017) (citation omitted). Indeed, the convenience of non-party witnesses—"one of the most important factors in determining whether to grant a motion to change venue under § 1404(a)," *Sloan*, 2006 WL 1662634, at *5—does not clearly cut in favor of this District, as witnesses will likely be spread throughout the nation, along with the "thousands" of class members "nationwide," Am. Compl., ECF No. 24, PageID.257–58, ¶¶ 91, 94. But the pendency of *Chalmers* does cut in favor of transfer because it would be more convenient for most, if not all, of the third-party witnesses to undergo the expense of travel in connection with just one case.

### 3.    Other Factors

The remaining transfer factors are, at most, neutral. First, neither forum has more familiarity with the governing law, as the claims raised in both actions fall under federal antitrust and common law. *See Just Intellectuals, PLLC v. Clorox Co.*, No. 10-12415, 2010 WL 5129014, at *4 (E.D. Mich. Dec. 10, 2010) ("The E.D. of Michigan is as familiar with the relevant federal law as the [other forum court]."). Second, since third-party witnesses will likely reside throughout the United States and outside the subpoena powers of both this Court and the SDNY, neither forum has a stronger availability of process to compel attendance of witnesses. *See* Fed. R. Civ. P. 45. Third, given that Plaintiffs have filed a *nationwide* putative class action, it is unpersuasive to argue that litigating this action in any other district court "would pose an *undue* [financial] hardship upon" them. *Danuloff v. Color Ctr.*, No. 93-cv-73478, 1993 WL 738578, at *5 (E.D. Mich. Nov. 22, 1993); *Sacklow*, 377 F. Supp. 3d at 880–81. Finally, even if Plaintiffs could somehow tip the scales on any of these other convenience factors, "[t]he concerns of judicial efficiency and the interests of justice . . . [in this case] strongly favor transfer and outweigh the inconvenience to Plaintiff[s]." *Colosimo v. Hitchai Home Elecs. (Am.), Inc.*, No. 11-12182, 2011 WL 4445840, at *2 (E.D. Mich. Sept. 26, 2011).

### III.    In the Alternative, This Action Should Be Stayed to Allow *Chalmers*, the First-Filed Action, to Proceed to Judgment

In the alternative to transfer, the Court should exercise its authority to stay this

case under the first-to-file rule. *See Smith*, 129 F.3d at 361 ("When a federal court is presented with [ ] a duplicative suit, it may exercise its discretion to stay the suit before it[.]"). The first-to-file analysis is no different in the context of a request for a stay. *See Echard v. Wells Fargo Bank N.A.*, No. 2:21-cv-5080, 2023 WL 2522839, at *5 (S.D. Ohio Mar. 15, 2023) ("After deciding that the first-to-file rule applies, disposition of the second-filed action is within the court's discretion. Among the available options are staying, dismissing, or transferring th[e] case." (internal citations and quotation marks omitted)).

Here, the first-to-file rule "presumptively applies" since "all three factors weigh in favor of its application." *Byler*, 2017 WL 10222371, at *3 (citation omitted). There are also no equitable considerations that weigh against applying the rule, as there is no evidence on the Defendants' parts of "inequitable conduct, bad faith, anticipatory suits, [or] forum shopping," *Zide*, 16 F. App'x at 437 (citations omitted), or of "extraordinary circumstances or improper motives," *Byler*, 2017 WL 10222371, at *4. The NCAA and the Big Ten are "defendant[s] in both cases; [they] did not choose where [they] would be sued, or by whom." *Baatz*, 814 F.3d at 792; *cf. Jones*, 2020 WL 7487839, at *4 (declining to issue a stay where the duplicative litigation was "Defendants' own doing"). Rather, it is Plaintiffs who chose to engage in "a separate action" when they "could simply litigate their claims through [*Chalmers*]." *See Baatz*, 814 F.3d at 792–93 (rejecting the plaintiffs' argument that

the defendant was engaging in forum shopping that would unfairly require them to travel to a different district court "and litigate along with thousands of other" putative class members, finding instead that the defendant "merely ha[d] taken steps to ensure that all the issues [we]re litigated in a single case" (citation and internal quotation marks omitted)). Staying the current action will also "not jeopardize Plaintiffs' ability to seek relief against" each defendant here, as the adjudication of issues in this case would simply be put on hold pending the completion of *Chalmers*, and "[t]o the extent that decisions made by the Southern District of New York are not determinative of all of the issues present herein, Plaintiffs may still have them heard in the present case at such time as that action is concluded." *Hubbard v. Papa John's Int'l, Inc.*, No. 5:19-cv-22, 2019 WL 6119242, at *6 (W.D. Ky. Nov. 18, 2019).

Further, judicial economy and efficiency, the "key principles of the first-to-file doctrine," weigh against dispensing with the rule here. *Jones*, 2020 WL 7487839, at *6. Given the duplicative nature of the two suits, there will be harm in the form of inconsistent rulings and an inefficient use of judicial and party resources if this action is allowed to proceed in this district court alongside *Chalmers* in the SDNY. *See supra* section II.A. "Application of the first-to-file rule, then, would likely limit the parties' costs and avoid duplicative litigation." *See Byler*, 2017 WL 10222371, at *4–5 (finding a stay "appropriate" where the two cases involved the "same legal issues," "similar factual circumstances," and would "involve

24

overlapping discovery and pretrial activity"); *see also Parks v. Procter & Gamble Co.*, No. 1:21-cv-258, 2022 WL 788795, at *3 (S.D. Ohio Mar. 15, 2022) (declining to deviate from the first-to-file rule where the two cases were "duplicative" and "[t]wo federal courts would have to rule on two separate motions to dismiss, and risk arriving at inconsistent rulings on those motions and beyond").

As the Sixth Circuit has instructed, "declining to apply the first-to-file rule should be done rarely," and here "the equities do not clearly support finding that this is one of those rare cases." *Baatz*, 814 F.3d at 793; *see also Sharma v. Pandey*, No. 07-cv-13508, 2007 WL 4571817, at *4 (E.D. Mich. Dec. 27, 2007) (granting stay where another case "was the first filed action and equity so demands"). Accordingly, the Court should grant a stay in this action to allow *Chalmers*, the first-filed action, to "proceed to judgment." *Zide*, 16 F. App'x at 437 (citation omitted).

## CONCLUSION

For the reasons set forth above, pursuant to the first-to-file rule and 28 U.S.C. § 1404(a), the Court should grant Defendants' Motion to Transfer Venue or, in the Alternative, to Stay Proceedings in this action pending resolution of *Chalmers v. National Collegiate Athletic Association*, No. 1:24-cv-05008 (PAE) in the SDNY.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2025, I electronically filed the foregoing

Motion to Transfer Venue or, in the Alternative, to Stay Proceedings with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to

all parties and counsel of record.

Dated:  January 13, 2025

By: */s/ Rakesh Kilaru*

Rakesh Kilaru
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
rkilaru@wilkinsonstekloff.com

*Counsel for National Collegiate Athletic Association*