## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN

DENARD ROBINSON; BRAYLON
EDWARDS; MICHAEL MARTIN;
SHAWN CRABLE, Individually and on
behalf of themselves and former University
of Michigan football players similarly
situated,

        Plaintiffs,

v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION aka "NCAA"; BIG TEN
NETWORK aka "BTN," and THE BIG TEN
CONFERENCE, INC.,

        Defendants.

Hon. Terrence G. Berg

Magistrate Judge Kimberly G. Altman

Case No. 2:24-12355-TGB-KGA

ORAL ARGUMENT REQUESTED

---

## DEFENDANTS' MOTION TO DISMISS
## THE AMENDED COMPLAINT

Defendants National Collegiate Athletic Association, Big Ten Network, and The Big Ten Conference, Inc. (hereinafter Defendants), by and through their respective undersigned counsel, hereby move the Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for entry of an Order dismissing with prejudice this action in its entirety for failure to state a claim upon which relief can be granted.

WHEREFORE, Defendants respectfully request that the Court grant their motion and dismiss the present action with prejudice. A brief in support of Defendants' Motion is attached.

Pursuant to Local Rule 7.1(a), the undersigned counsel certify that the parties have communicated regarding the relief sought in this Motion, and Plaintiffs do not concur in the requested relief.

Dated:  January 13, 2025

By: */s/ Britt M. Miller*
Britt M. Miller
Daniel T. Fenske
Andrew S. Rosenman
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-8663
bmiller@mayerbrown.com
dfenske@mayerbrown.com
arosenman@mayerbrown.com

*Counsel for The Big Ten Conference, Inc.*

By: */s/ Bradley R. Hutter*
* Bradley R. Hutter (MN 0396531)
**FAFINSKI MARK & JOHNSON, P.A.**
One Southwest Crossing
11095 Viking Drive, Suite 420
Eden Prairie, MN 55344
(952) 995-9500
bradley.hutter@fmjlaw.com

* Attorney not admitted in this District, co-signing under LR 83.20(i)(l)(D)(i). Attorney application for admission pending.

Respectfully submitted,

By: */s/ Rakesh Kilaru*
Rakesh Kilaru (*pro hac vice*)
Tamarra Matthews Johnson (*pro hac vice*)
Calanthe Arat (*pro hac vice*)
Matthew Skanchy (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
rkilaru@wilkinsonstekloff.com
tmatthewsjohnson@wilkinsonstekloff.com
carat@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

By: */s/ Jacob K. Danziger*
Jacob K. Danziger (P78634)
**ARENTFOX SCHIFF LLP**
350 s. Main Street, Suite 210
Ann Arbor, MI 48104
Telephone: (734) 222-1516
Facsimile: (734) 222-1501

*Counsel for National Collegiate Athletic Association*

Louis F. Ronayne (P81877)
Justin M. Wolber (P85728)
**VARNUM LLP**
39500 High Pointe Boulevard,
Suite 350
Novi, MI 48375
Telephone: (248) 567-7400
lfronayne@varnumlaw.com
jmwolber@varnumlaw.com

*Counsel for Big Ten Network*

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN

DENARD ROBINSON; BRAYLON
EDWARDS; MICHAEL MARTIN;
SHAWN CRABLE, Individually and on
behalf of themselves and former University
of Michigan football players similarly
situated,

             Plaintiffs,

v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION aka "NCAA"; BIG TEN
NETWORK aka "BTN," THE BIG TEN
CONFERENCE, INC.,

             Defendants.

Hon. Terrence G. Berg

Magistrate Judge Kimberly G.
Altman

Case No. 2:24-12355-TGB-KGA

ORAL ARGUMENT REQUESTED

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
## DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

ISSUES PRESENTED.............................................................................. ix

RELEVANT AUTHORITIES .................................................................... xi

INTRODUCTION ...................................................................................... 1

BACKGROUND ........................................................................................ 2

    A.    *O'Bannon* & *Keller* .................................................................. 3

    B.    *Alston* ........................................................................................ 6

    C.    Ongoing Litigation .................................................................... 8

    D.    This Case .................................................................................... 9

ARGUMENT ............................................................................................ 10

I.    Plaintiffs' Claims Are Time-Barred. ............................................... 10

II.    Plaintiffs' Claims Are Barred by the *Alston* and *Keller*
Settlement Releases and *O'Bannon* Judgment. ............................. 14

    A.    *Alston* Forecloses Two Plaintiffs' Claims for Damages. .... 14

    B.    *Keller* Forecloses Plaintiffs' Claims Related to
Videogames. ............................................................................ 15

    C.    *O'Bannon* Forecloses Plaintiffs' Claims for Injunctive
Relief. ...................................................................................... 16

III.    Plaintiffs Have Not Plausibly Pleaded Injury................................. 18

    A.    Plaintiffs Cannot Satisfy Their Burden to Plead Injury by
Alleging the Deprivation of Non-Existent Rights................. 18

    B.    Plaintiffs Have No Copyright Interests in Game Footage. ... 20

    C.    Plaintiffs Have No Cognizable Right of Publicity in
Rebroadcasts of NCAA Game Footage. ............................... 21

      D.     Any Right-of-Publicity-Based Claim Based on Later Use of Copyrighted Footage Would Be Preempted by the Copyright Act. ........................................................................23

IV.     Plaintiffs' Unjust Enrichment Claim Must Be Dismissed............................24

CONCLUSION ........................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Ashcroft v. Iqbal*,
      556 U.S. 662 (2009)....................................................................................10

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
      459 U.S. 519 (1983)....................................................................................19

*B & H Med., L.L.C. v. ABP Admin., Inc.*,
      526 F.3d 257 (6th Cir. 2008) .....................................................................19

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
      805 F.2d 663 (7th Cir. 1986) .....................................................................24

*Bell Atl. Corp. v. Twombly*,
      550 U.S. 544 (2007)....................................................................................10

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
      429 U.S. 477 (1977)....................................................................................20

*Buck v. Thomas M. Cooley L. Sch.*,
      597 F.3d 812 (6th Cir. 2010) ...................................................................2, 3

*Campau v. Orchard Hills Psychiatric Ctr.*,
      946 F. Supp. 507 (E.D. Mich. 1996) .........................................................11

*CBC Cos., Inc. v. Equifax, Inc.*,
      561 F.3d 569 (6th Cir. 2009) .....................................................................20

*Chohv. Brown Univ.*,
      No. 3:23-cv-00305, 2024 WL 4465476 (D. Conn. Oct. 10, 2024) ..............13

*Community for Creative Non-Violence v. Reid*,
      490 U.S. 730 (1989)....................................................................................21

*Cooper v. Fed. Reserve Bank of Richmond*,
      467 U.S. 867 (1984)........................................................................ 16, 17, 18

*Corp. Auto Res. Specialists v. Melton Motors, Inc.*,
      No. 05-70010, 2005 WL 1028225 (E.D. Mich. Apr. 19, 2005)....................13

**Cases (cont.)**

*Donaway v. Rohm & Haas Co.*,
No. 3:06-CV-575-H, 2009 WL 1917083 (W.D. Ky. July 1, 2009) ..............15

*Dora v. Frontline Video, Inc.*,
15 Cal. App. 4th 536 (1993) ..........................................................................22

*Dryer v. NFL*,
55 F. Supp. 3d 1181 (D. Minn. 2014) ...........................................................22

*Dryer v. NFL*,
814 F.3d 938 (8th Cir. 2016) ................................................................. 22, 24

*Duncan v. Bank of Am., N.A.*,
No. 13-cv-12303, 2013 WL 3300497 (E.D. Mich. June 28, 2013)................2

*Egerer v. Woodland Realty, Inc.*,
556 F.3d 415 (6th Cir. 2009) .........................................................................12

*Expert Elec., Inc. v. Levine*,
554 F.2d 1227 (2d Cir. 1977) ........................................................................18

*Federated Dep't Stores, Inc. v. Moitie*,
452 U.S. 394 (1981)........................................................................................17

*Ga.-Pac. Consumer Prods. LP v. Four-U-Packaging, Inc.*,
701 F.3d 1093 (6th Cir. 2012) .......................................................................18

*Ganson v. Detroit Public Schools*,
No. 351276, 2021 WL 219225 (Mich. App. Jan. 21, 2021) .........................12

*Gionfriddo v. MLB*,
94 Cal. App. 4th 400 (Cal. Ct. App. 2001)....................................................22

*Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*,
209 F.3d 552 (6th Cir. 2000) .........................................................................12

*Grand Rapids Plastics, Inc. v. Lakian*,
188 F.3d 401 (6th Cir. 1999) .........................................................................13

*Guy v. Lexington-Fayette Ur. Cnty. Gov't*,
488 F. App'x 9 (6th Cir. 2012)................................................................ 11, 12

**Cases (cont.)**

*House v. NCAA*,
    545 F. Supp. 3d 804 (N.D. Cal. 2021).............................................................23

*In re Jackso*n,
    972 F.3d 25 (2d Cir. 2020) ...........................................................................24

*In re Literary Works in Electronic Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011) ..........................................................................15

*In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*,
    375 F. Supp. 3d 1058 (N.D. Cal. 2019)....................................................8, 15

*In re NCAA Grant-in-Aid Cap Antitrust Litig.*,
    958 F.3d 1239 (9th Cir. 2020) ............................................................ 1, 6, 8

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
    990 F. Supp. 2d 996 (N.D. Cal. 2013).........................................................23

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
    No. 09-1967, 2014 WL 1410451 (N.D. Cal. 2014)......................................23

*In re NFL's Sunday Ticket Litig.*,
    933 F.3d 1136 (9th Cir. 2019) ......................................................................21

*In re Pratt*,
    No. 1:13-CV-1083, 2016 WL 9777358 (W.D. Mich. Jan. 29, 2016) ..........11

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) .....................................................................12

*King v. Henderson*,
    No. 99-1800, 2000 WL 1478360 (6th Cir. 2000 Sep. 27, 2000)...................11

*Laumann v. NHL*,
    907 F. Supp. 2d 465 (S.D.N.Y. 2012) .................................................... 21, 22

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)......................................................................................19

*Madison Square Garden, L.P. v. NHL*, No. 07 CV,
    No. 07 CV 8455, 2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008)............ 13, 14

**Cases (cont.)**

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) ......................................................................24

*Marshall v. ESPN, Inc.*,
    111 F. Supp. 3d 815 (M.D. Tenn. 2015) ................................................ *passim*

*Marshall v. ESPN, Inc.*,
    668 F. App'x 155 (6th Cir. 2016) ........................................................... *passim*

*Melendez v. Sirius XM Radio, Inc.*,
    50 F. 4th 294 (2d Cir. 2022) .......................................................................24

*Mertik Maxitrol GMBH & Co. KG v. Honeywell Techs. SARL*,
    No. 10-12257, 2012 WL 13008394 (E.D. Mich. July 24, 2012) .................25

*NBA v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1997) ................................................................ 21, 23

*NFL v. Alley*,
    624 F. Supp. 6 (S.D. Fla. 1983) ...................................................................22

*Nichols v. Moore*,
    334 F. Supp. 2d 944 (E.D. Mich. 2004) .......................................................22

*O'Bannon v. NCAA*,
    7 F. Supp. 3d 955 (N.D. Cal. 2014) ....................................................... *passim*

*O'Bannon v. NCAA*,
    802 F.3d 1049 (9th Cir. 2015) ............................................................... *passim*

*Okla. Sports Props., Inc. v. Indep. Sch. Dist. No. 11*,
    957 P.2d 137 (Okla. Civ. App. 1998) .................................................. 21, 22

*Parks v. LaFace Records*,
    329 F.3d 437 (6th Cir. 2003) ......................................................................22

*Peck v. Gen. Motors Corp.*,
    894 F.2d 844 (6th Cir. 1990) ......................................................... 10, 12, 13

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
    507 F.3d 117 (2d Cir. 2007) .......................................................................19

**Cases (cont.)**

*Rawe v. Liberty Mut. Fire Ins. Co.*,
   462 F.3d 521 (6th Cir. 2006) ........................................................................18

*Ray v. ESPN, Inc.*,
   783 F.3d 1140 (8th Cir. 2015) .....................................................................24

*Ritchie v. Williams*,
   395 F.3d 283 (6th Cir. 2005) ......................................................................25

*Ruffin-Steinback v. dePasse*,
   267 F.3d 457 (6th Cir. 2001) ......................................................................25

*S.W. Broad. Co. v. Oil Center Broad. Co.*,
   210 S.W.2d 230 (Tex. Civ. App. 1947)................................................ 21, 22

*Scherer v. JP Morgan Chase & Co.*,
   508 F. App'x 429 (6th Cir. 2012) ................................................................18

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011)................................................................................ 17, 18

*Vulcan, Inc. v. Fordees Corp.*,
   658 F.2d 1106 (6th Cir. 1981) ....................................................................18

*Washington v. NFL*,
   880 F. Supp. 2d 1004 (D. Minn. 2012) .......................................................21

*Wis. Interscholastic Athletic Ass'n v. Gannett Co.*,
   658 F.3d 614 (7th Cir. 2011) ................................................................ 21, 22

*Yong Ki Hong v. KBS Am., Inc.*,
   951 F. Supp. 2d 402 (E.D.N.Y. 2013) .........................................................24

**Statutes**

15 U.S.C. § 15(b) ............................................................................................10

17 U.S.C. § 106 ......................................................................................... 23, 24

17 U.S.C. § 201(a) ..........................................................................................21

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................................1, 2

Federal Rule of Civil Procedure 23(b)(2) ................................................................6

**Other Authorities**

Am. Class Action Settlement Agreement & Release, *Keller v. NCAA*,
    4:09-cv-1967-CW, ECF No. 1158-2 (N.D. Cal. July 23, 2014) ...... 1, 2, 5, 16

Final J. & Order of Dismissal with Prejudice, *Keller v. NCAA*,
    No. 4:09-cv-1967-CW, ECF No. 1244 (N.D. Cal. August 19, 2015).............4

Order & Final J., *In re NCAA Grant-in-Aid Cap Antitrust Litig.*,
    No. 14-md-2541-CW, ECF No. 746 (N.D. Cal. Dec. 6, 2017)............. *passim*

**ISSUES PRESENTED**

1.     Are Plaintiffs' antitrust and unjust enrichment claims time-barred under the applicable statutes of limitations where the alleged conduct giving rise to those claims occurred between 12 and 24 years ago?

2.     Are the damages claims brought by Plaintiffs Denard Robinson and Michael Martin barred by the settlement agreement in *National Collegiate Athletic Association Grant-In-Aid Cap Antitrust Litigation*, No. 4:14-md-02541-CW (N.D. Cal.), where both Plaintiffs were members of a damages settlement class that released Defendants from any and all past, present, and future claims arising out of or relating in any way to any of the legal, factual, or other allegations raised in that matter?

3.     Are Plaintiffs' damages claims arising from the alleged use of their names, images, and likenesses in videogames barred in part by the settlement agreement in *Keller v. National Collegiate Athletic Association*, No. 4:09-cv-1967-CW (N.D. Cal.), where Plaintiffs were members of the settlement class that released all past, present, and future claims arising out of or related to the alleged use of their names, images, and likenesses in NCAA-branded videogames, including but not limited to any claims based in any way on alleged rights of publicity under the law of any state or the United States?

4.     Are Plaintiffs precluded from relitigating their claims for injunctive relief against the NCAA and Big Ten Conference, Inc. where each Plaintiff was a

member of a certified injunctive class in *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 4:09-cv-1967-CW (N.D. Cal.), that challenged rules regarding compensation for the alleged use of student-athletes' names, images, and likeness in live broadcasts and archival footage for promotional purposes and those claims were conclusively resolved by the United States Court of Appeals for the Ninth Circuit?

5.      Did Plaintiffs plausibly plead injury in fact and antitrust injury by alleging Defendants violated their purported publicity rights where the United States Court of Appeals for the Sixth Circuit has held that participants in sporting events have no cognizable publicity rights in the copyrighted broadcast footage of games in which they played and where any purported claims based on a later use of copyrighted footage would be preempted by the Copyright Act?

6.      Should the Court dismiss Plaintiffs' unjust enrichment claim where it is an improper effort to salvage an antitrust claim that fails for all the reasons set forth above?

## RELEVANT AUTHORITIES

*Marshall v. ESPN, Inc.*, 111 F. Supp. 3d 815 (M.D. Tenn. 2015)

*Marshall v. ESPN, Inc.*, 668 F. App'x 155 (6th Cir. 2016)

*Choh v. Brown Univ.*, No. 3:23-cv-00305, 2024 WL 4465476 (D. Conn. Oct. 10, 2024)

*Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867 (1984)

*Guy v. Lexington-Fayette Ur. Cnty. Gov't*, 488 F. App'x 9 (6th Cir. 2012)

*In re Literary Works in Electronic Databases Copyright Litig.*, 654 F.3d 242 (2d Cir. 2011)

*In re Pratt,* No. 1:13-CV-1083, 2016 WL 9777358 (W.D. Mich. Jan. 29, 2016)

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

*Melendez v. Sirius XM Radio, Inc.*, 50 F. 4th 294 (2d Cir. 2022)

*NBA v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997)

*Parks v. LaFace Records*, 329 F.3d 437 (6th Cir. 2003)

*Peck v. Gen. Motors Corp.*, 894 F.2d 844 (6th Cir. 1990)

*Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521 (6th Cir. 2006)

*Scherer v. JP Morgan Chase & Co.*, 508 F. App'x 429 (6th Cir. 2012)

**INTRODUCTION**

The issue of whether student-athletes should be compensated for their names, images, and likenesses (NIL) has generated tremendous commentary and litigation for more than a decade. Now, four student-athletes who competed many years ago seek to litigate the NCAA's NIL compensation rules as if they present novel issues. Their claims fail for several reasons.

*First*, Plaintiffs' claims are all time-barred. Antitrust claims have a four-year statute of limitations. Plaintiffs waited too long to bring this action. Their proposed class definition ends in 2016—more than *eight years ago*—and their claims are based on conduct allegedly occurring between *eight years and several decades ago*. *See* Am. Compl., ECF No. 24, PageID.257, ¶ 88.

*Second*, nearly all of Plaintiffs' claims are barred by prior releases or res judicata. Two Plaintiffs were part of a settlement that released "any and all past, present and future claims"[1] related to "the NCAA's entire compensation framework." *In re NCAA Grant-in-Aid Cap Antitrust Litig.*, 958 F.3d 1239, 1247 (9th Cir. 2020) [*Alston II*]. All four Plaintiffs are members of a settlement class that released claims arising from use of their NIL in NCAA-branded videogames. *See*

---

[1] Order & Final J., *In re NCAA Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW (N.D. Cal. Dec. 6, 2017), ECF No. 746 at 11–12 [hereinafter *Alston* Approval Order].

*Keller v. NCAA*, No. 4:09-cv-1967-CW (N.D. Cal. July 23, 2014), ECF No. 1158-2 [*Keller* Settlement]. And all four Plaintiffs are members of the certified injunctive class in *O'Bannon v. NCAA*, 7 F. Supp. 3d 955 (N.D. Cal. 2014) [*O'Bannon I*], which resolved a challenge to NCAA rules regarding compensation for use of student-athletes' alleged NIL "in *game footage* or in videogames" both during *and after* their college eligibility. *Id.* at 965 (emphasis added). Res judicata precludes Plaintiffs from relitigating those issues a decade later.

*Third*, Plaintiffs fail to plausibly plead injury based on alleged use of their NIL in "broadcasts of sporting events." *Marshall v. ESPN, Inc.*, 668 F. App'x 155, 157 (6th Cir. 2016) [*Marshall II*]. They have no such publicity rights, and claims based on such hypothetical rights would be preempted by the Copyright Act.

*Finally*, Plaintiffs cannot resuscitate their failed antitrust claims by recharacterizing them as unjust enrichment claims.

The Amended Complaint should accordingly be dismissed with prejudice.

## BACKGROUND

Below is a summary of the history of litigation over NCAA rules and NIL.[2]

---

[2] When considering a Rule 12(b)(6) motion to dismiss, a court may consider "(1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, [and] (3) public documents . . . ." *Duncan v. Bank of Am., N.A.*, No. 13-cv-12303, 2013 WL 3300497, at *1 (E.D. Mich. June 28, 2013) (citation and quotation marks omitted). A "court may take judicial notice

A.    *O'Bannon* & *Keller*

In May 2009, Sam Keller, a former college football player, filed suit against the NCAA, Electronic Arts, Inc. (EA), and the Collegiate Licensing Company (CLC). He claimed that the defendants had violated his state-law NIL rights by using his NIL in a college football videogame. In July 2009, Ed O'Bannon, a former college basketball player, sued the NCAA and CLC in the same court. O'Bannon's complaint alleged "that the NCAA's amateurism rules, insofar as they prevented student-athletes from being compensated for the use of their NILs," violated Section 1 of the Sherman Act. *O'Bannon v. NCAA*, 802 F.3d 1049, 1055 (9th Cir. 2015) [*O'Bannon II*]. O'Bannon specifically challenged NCAA rules allegedly requiring student-athletes to sign forms "relinquish[ing] all rights in perpetuity for use of their images, likenesses and/or names." 3d Consolidated Am. Class Action Compl., *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 4:09-cv-1967-CW (N.D. Cal. July 19, 2013), ECF No. 832, ¶ 610. Those claims addressed the alleged use of student-athlete NIL in live broadcasts and archival footage for promotional purposes. *See, e.g.*, *id.* ¶¶ 444–76. The district court consolidated these cases.

On November 8, 2013, the court denied certification of a damages relief class but certified an injunctive relief class in *O'Bannon* defined as:

---

of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).

> All current **and former** student-athletes residing in the United States who compete on, or competed on . . . an NCAA Football Bowl Subdivision (formerly known as Division I-A until 2006) men's football team and whose images, likenesses and/or names may be, or have been, included or could have been included (by virtue of their appearance in a team roster) in **game footage** or in videogames licensed or sold by Defendants, their co-conspirators, or their licensees.

*O'Bannon I*, 7 F. Supp. 3d at 965 (emphasis added). The reference to "game footage" covered both live and archival footage—as confirmed by the inclusion of *former* student-athletes in the *injunctive* class definition. After class certification, the *O'Bannon* plaintiffs voluntarily dismissed their damages claims against the NCAA with prejudice. *O'Bannon* was subsequently deconsolidated from *Keller*.

The *Keller* plaintiffs then settled their claims with the NCAA on behalf of a certified settlement class that included:

> All NCAA Division I football . . . players (1) listed on a roster published or issued by a school whose team was included in an NCAA-Branded Videogame originally published or distributed from May 4, 2003 through September 3, 2014 and (2) whose assigned jersey number appears on a virtual player in the software, or whose photograph was otherwise included in the software.

Final J. & Order of Dismissal with Prejudice, *Keller v. NCAA*, No. 4:09-cv-1967-CW (N.D. Cal. Aug. 19, 2015), ECF No. 1244 at 2.[3] Plaintiffs were unquestionably

---

[3] As relevant here, the *Keller* settlement agreement involved a release of:
> "[A]ny and all past, present, and future claims . . . arising out of, involving, or relating to the alleged use of any [NIL] in . . . NCAA-Branded Videogames, or the alleged use of or failure to compensate for the alleged use of any NCAA student-athlete's [NIL] in connection

members of this class.

The remaining injunctive claims against the NCAA in *O'Bannon* proceeded to a bench trial. The court found that the challenged rules violated Section 1 of the Sherman Act in a narrow way. The court thus prohibited the NCAA from capping scholarships to student-athletes "generated from the use of their [NIL]" at a number below the federal "cost of attendance" for each school, and "prohibit[ed] the NCAA from enforcing any rules to prevent its member schools and conferences from offering to deposit a limited share of licensing revenue in trust for their FBS football and Division I basketball recruits, payable when they leave school or their eligibility expires." *O'Bannon I*, 7 F. Supp. 3d at 1007–08.

The Ninth Circuit affirmed in part and reversed in part. It agreed with the district court's finding of an antitrust violation related to NIL. *O'Bannon II*, 802 F.3d at 1053. And it affirmed the district court's injunction prohibiting the NCAA from capping scholarships below the cost of attendance. *Id.* at 1075–76. But it concluded that the district court clearly erred by enjoining the NCAA to permit students "to

---

with EA's NCAA-Branded Videogames . . . that have been, could have been, or should have been asserted in the Lawsuits, including but not limited to any claims based in any way on alleged rights of publicity or [NIL] rights under the law of any state or the United States . . . ."
Am. Class Action Settlement Agreement & Release, *Keller v. NCAA*, No. 4:09-cv-1967-CW (N.D. Cal. July 23, 2014), ECF No. 1158-2, ¶ 33 [hereinafter *Keller* Settlement].

receive NIL cash payments untethered to their education expenses." *Id.* at 1076.

 B. *Alston*

 As *O'Bannon* proceeded, other student-athletes filed antitrust actions against the NCAA and certain Division I (DI) conferences, which were consolidated into the *NCAA Grant-In-Aid Cap Antitrust Litigation* (*Alston*) MDL in June 2014.

 The *Alston* plaintiffs "sought to dismantle the NCAA's entire compensation framework," challenging all NCAA limits on compensation and benefits beyond the cost of attendance. *Alston II*, 958 F.3d at 1247. The court certified three different Federal Rule of Civil Procedure 23(b)(2) injunctive relief classes. *See* Order, *Alston*, No. 4:14-md-02541-CW (N.D. Cal. Dec. 4, 2015), ECF No. 305.

 In February 2017, the parties submitted a proposed settlement agreement resolving only the damages claims on behalf of three settlement classes, which the court approved and issued a final judgment as to damages in December 2017. One of those classes was the DI FBS Football Class:

> All current and former NCAA Division I Football Bowl Subdivision ("FBS") football student-athletes who, at any time from March 5, 2010 through the date of Preliminary Approval of this Settlement, received from an NCAA member institution for at least one academic term (such as a semester or quarter) a Full Athletics Grant-In-Aid (defined herein).

*Alston* Approval Order at 2. Plaintiffs Robinson and Martin fell within that class. The defendants agreed to pay roughly $208 million, with each class member receiving payment based on the number of years played. *Id.* at 1. While the *Alston*

plaintiffs' claims were not limited to NIL, the measure of relief the class received—the difference between grant-in-aid scholarships they received and full cost-of-attendance scholarships—was exactly what was required to be permitted as NIL-related compensation pursuant to the injunctive relief judgment in *O'Bannon* (which challenged only NIL restrictions). *See id.*; *O'Bannon II*, 802 F.3d at 1075–76.

In exchange, the plaintiffs agreed, on behalf of the classes, to:

> release the Releasees from *any and all past, present and future claims, demands, rights, actions, suits, or causes of action, for monetary damages of any kind* (including but not limited to actual damages, statutory damages, and exemplary or punitive damages), whether class, individual or otherwise in nature, known or unknown, foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, contingent or non-contingent, under the laws of any jurisdiction, which Releasors or any of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have or hereafter can, shall or may have, *arising out of or relating in any way to any of the legal, factual, or other allegations made in Plaintiffs' Actions, or any legal theories that could have been raised on the allegations in Plaintiffs' Actions*.

*Alston* Approval Order at 11–12 (emphasis added). The "Releasees" included the "the NCAA, each of the Conference Defendants, and each of their respective member institutions (past and present), subsidiary, parent, related, and affiliated Persons," and other related parties. *Id.* at 11 n.49.[4] The "Releasees" were "discharged

---

[4] The Big Ten Conference, Inc. was a "Conference Defendant" in *Alston*. *See Alston* Approval Order at 11 n.49. The Big Ten Network is a "related" or "affiliated Person[]" under the settlement agreement. *Id.*; *see also* Settlement Agreement, *Alston*, No. 4:14-md-02541-CW (N.D. Cal. Feb. 3, 2017), ECF No. 560-1, at 6

and released from all Released Claims," and the settlement members were "permanently barred and enjoined from instituting or prosecuting any of the Released Claims." *Id.* at 12. The agreement and judgment were "binding on and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Released Claims maintained by or on behalf of the [settlement classes]." *Id.*

After a bench trial on the remaining prospective injunctive relief claims, the court found that "preventing unlimited cash payments" was a permissible procompetitive effect of the challenged rules, but issued a narrow injunction "that would generally prohibit the NCAA from limiting education-related benefits." *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, 375 F. Supp. 3d 1058, 1062 (N.D. Cal. 2019) [hereinafter *Alston I*], aff'd, *Alston II*, 958 F.3d at 1244, aff'd, *NCAA v. Alston*, 594 U.S. 69 (2021).

C.    Ongoing Litigation

Other antitrust suits against the NCAA and others have been pending for years. Notably, in 2020, the *Alston* attorneys filed a highly publicized suit challenging *all* NCAA restrictions on NIL compensation. *See In re College Athlete*

─────────────────────

("'Person(s)' means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership . . . and any business or legal entity and any spouses, heirs, predecessors, successors, representatives or assignees of any of the foregoing.").

*NIL Litig.*, No. 4:20-cv-03919-CW (N.D. Cal.). Since then, many other cases have been filed addressing student-athlete compensation more generally. Other suits like this one, on behalf of the identical purported class or narrower groups of student-athletes, have been filed in the Southern District of New York, the Southern District of Ohio, the North Carolina Superior Court, and the Los Angeles Superior Court.

    D.    <u>This Case</u>

Plaintiffs are former student-athletes who played DI FBS Football between 2001 and 2012. *See* Am. Compl., ECF No. 24, PageID.219–22, ¶¶ 1–4. Plaintiffs allege Defendants violated antitrust laws through NCAA rules restricting NIL compensation to student-athletes, and by using their alleged NIL for commercial purposes. *Id.*, PageID.236, ¶ 39. Plaintiffs allege NCAA rules required them to sign away their purported NIL rights to compete as student-athletes. *Id.*, PageID.243–44, ¶¶ 57–59. As in *O'Bannon*, Plaintiffs challenge the use of "archival footage" of games, "video game licensing, and various other commercial uses of student-athletes' identities." *Id.*, PageID.241, ¶ 51; 246, ¶ 64.

Plaintiffs' proposed class is unclear. They claim to sue "on behalf of all former University of Michigan Football players who played prior to 2016," *id.*, PageID.218, but their class definition is much broader: "[a]ll persons who were NCAA student-athletes prior to June 15, 2016, whose image or likeness has been used in any video posted by or licensed by the NCAA, Big Ten Network" or various related persons

and entities, *id.*, PageID.257, ¶ 88; *see also* Mot. for Class Cert., ECF No. 28, PageID.305, ¶ 1 (same). They assert claims under Section 1 of the Sherman Act and a common law unjust enrichment claim, and seek injunctive and declaratory relief, actual and punitive damages, and disgorgement of profits. *Id.*, PageID.267–97.

## ARGUMENT

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs cannot clear that bar.

## I.   PLAINTIFFS' CLAIMS ARE TIME-BARRED.

Plaintiffs' antitrust claims are based on alleged conduct occurring between 12 and 24 years ago (longer for other proposed class members) and thus are barred by the four-year statute of limitations. *See* 15 U.S.C. § 15(b).

An antitrust claim "accrues and the limitations period commences each time a defendant commits an act which injures the plaintiff[s]." *Peck v. Gen. Motors Corp.*, 894 F.2d 844, 848 (6th Cir. 1990). The act alleged here is the purported NCAA requirement that Plaintiffs "sign forms that effectively transfer[red] their publicity rights to the NCAA." *See* Am. Compl., ECF No. 24, PageID.230, ¶ 22.

Plaintiffs claim they signed these forms between *12 and 24 years* ago—well outside the four-year limitations period. *Id.*, PageID.265, ¶ 112.

Similarly, while the source of law for Plaintiffs' unjust enrichment claim is unclear, there is no basis for believing it is timely. If, for example, Plaintiffs' claim is brought under Michigan law, the statute of limitations would likely be three years (and, at most, six years). *See, e.g.*, *In re Pratt,* No. 1:13-CV-1083, 2016 WL 9777358, at *3–4 (W.D. Mich. Jan. 29, 2016).

Plaintiffs seek refuge in exceptions to the limitations period, *see* Am. Compl., ECF No. 24, PageID.264–66, ¶¶ 110–12, but their conclusory invocations change nothing. Statutes of limitations "protect important social interests" and the Court should reject Plaintiffs' attempts to "trivialize the statute of limitations by promiscuous application of tolling doctrines." *Campau v. Orchard Hills Psychiatric Ctr.*, 946 F. Supp. 507, 512 (E.D. Mich. 1996) (citation omitted); *see also King v. Henderson*, No. 99-1800, 2000 WL 1478360, at *5 (6th Cir. 2000 Sep. 27, 2000).

Neither equitable estoppel nor tolling justifies Plaintiffs' *12-to-24-year* delay. The underlying facts of Plaintiffs' claims have been known to them throughout their time as student-athletes and for more than a decade thereafter, as they were class members of highly publicized litigation on similar NIL issues. Given this, Plaintiffs had every reason to be aware of and pursue their claims and cannot claim they acted diligently in waiting until now to bring those claims. *See Guy v. Lexington-Fayette*

11

*Ur. Cnty. Gov't*, 488 F. App'x 9, 19 (6th Cir. 2012). The only supposed "extraordinary circumstance" Plaintiffs identify to justify their delay is being "barely at the age of maturity" when they allegedly signed forms ceding their purported NIL rights, Am. Compl., ECF No. 24, PageID.265, ¶ 111, but Plaintiffs were members of classes that already litigated these claims, so it is evident their age "did not impede [their] ability" to timely file. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc*., 209 F.3d 552, 560–61 (6th Cir. 2000); *see also Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 425 (6th Cir. 2009).

The continuing violations exception to the antitrust statute of limitations similarly does not apply.[5] Plaintiff does not identify an "overt act" by Defendants *within the limitations period*, *Peck*, 894 F.2d at 849, that constitutes a "separate antitrust violation[]" inflicting "a continuing injury to competition, not merely a continuing pecuniary injury to a plaintiff." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1055–56 (5th Cir. 1982) (citation omitted). Instead, the only overt act alleged by Plaintiffs is the purported NCAA requirement that, decades ago, they sign a contract ceding their purported NIL rights to participate in college sports. Defendants' alleged unlawful use of game footage involving

---

[5] This doctrine is no longer recognized in Michigan and thus cannot extend to Plaintiffs' unjust enrichment claim. *Ganson v. Detroit Public Schools*, No. 351276, 2021 WL 219225, at *3 (Mich. App. Jan. 21, 2021).

Plaintiffs is merely an effect of that initial act, and thus the continuing violations exception is unavailing. *See Peck*, 894 F.2d at 849 ("[T]he focus is on the timing of the causes of injury, i.e., the defendant's overt acts," not "the effects of the overt acts."). Even if the alleged continued use of game footage raised legal concerns, performance of a contract—even an allegedly anticompetitive contract—is not an "overt act" restarting the limitations period. *See, e.g.*, *Peck*, 894 F.2d at 849; *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 406 (6th Cir. 1999); *Corp. Auto Res. Specialists v. Melton Motors, Inc*., No. 05-70010, 2005 WL 1028225, at *3 (E.D. Mich. Apr. 19, 2005).

Courts have rejected the continuing violations arguments in factually analogous circumstances. Three months ago, the District of Connecticut did so in dismissing a challenge to an agreement among Ivy League schools not to award athletic scholarships. *See Choh v. Brown Univ.*, No. 3:23-cv-00305, 2024 WL 4465476, at *12–13 (D. Conn. Oct. 10, 2024). The court concluded that the plaintiff's "claim accrued . . . and the statute of limitations began running" when "he enrolled at Brown University," and that the decision not "to award him an athletic scholarship or compensation for athletic services during the remainder of his time at Brown was simply a manifestation of . . . Brown's decision to enter into the most recent version of the Ivy League Agreement." *Id.* at *12. *See also Madison Square Garden, L.P. v. NHL*, No. 07 CV 8455, 2008 WL 4547518, at *10-11 (S.D.N.Y. Oct.

10, 2008). Here, Plaintiffs similarly challenge the continuing effects of contracts they allegedly signed well outside the limitations period, and their claims are accordingly time-barred.

## II.   PLAINTIFFS' CLAIMS ARE BARRED BY THE *ALSTON* AND *KELLER* SETTLEMENT RELEASES AND *O'BANNON* JUDGMENT.

### A.   *Alston* Forecloses Two Plaintiffs' Claims for Damages.

Plaintiffs Robinson and Martin have already released the damages claims they bring here. Both were members of the *Alston* damages settlement class because each played on a DI FBS football team during the *Alston* class period (March 5, 2010, through March 21, 2017) and received "from an NCAA member institution for at least one academic term . . . a Full Athletics Grant-In-Aid." *Alston* Approval Order at 2; *see also* Am. Compl., ECF No. 24, PageID.219–21, ¶¶ 1, 3. And each Defendant is a "Releasee" under the settlement agreement. *See supra* at 6–8. Robinson and Martin thus have released all possible claims for damages against Defendants "arising out of or relating in any way to any of the legal, factual, or other allegations made in [*Alston*], or any legal theories that could have been raised on the allegations in [*Alston*]." *Id.* at 11–12.

That release is "binding on and ha[s] *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Released Claims maintained by or on behalf of the Releasors." *Id.* at 12. Plaintiffs seek "a competitive share of the revenue being brought into the [Defendants] from Plaintiffs'

and Class Members' labor." Am. Compl., ECF No. 24, PageID.274, ¶ 137. That falls

within the *Alston* complaint, which challenged "the current, interconnected set of

NCAA rules that limit the compensation [student-athletes] may receive in exchange

for their athletic services." *Alston I*, 375 F. Supp. 3d at 1062. Further, Plaintiffs' NIL

damages claims are premised on a "legal theor[y] that could have been raised on the

allegations in" *Alston*, particularly given that *Alston* was filed while a lawsuit

challenging NIL restrictions, including the alleged perpetual licensing of student-

athlete NIL rights, was still pending. *Alston* Approval Order at 11–12.

Plaintiffs also cannot escape the settlement by arguing that they challenge

*ongoing* violations of their alleged NIL rights through continued use of archival

footage. *See, e.g.*, *In re Literary Works in Electronic Databases Copyright Litig.*,

654 F.3d 242, 248 (2d Cir. 2011) (even if "future [copyright] infringements would

be considered independent injuries," they fell within the releases because plaintiffs

sought "injunctive relief for future uses, and therefore contemplate[d] these alleged

future injuries"); *Donaway v. Rohm & Haas Co*., No. 3:06-CV-575-H, 2009 WL

1917083, at *2 (W.D. Ky. July 1, 2009).

    B.    *Keller* Forecloses Plaintiffs' Claims Related to Videogames.

The *Keller* settlement forecloses Plaintiffs' claims associated with use of their

purported NIL or alleged publicity rights in NCAA-branded videogames. *See, e.g.*,

Am. Compl., ECF No. 24, PageID.241, ¶¶ 50–51; 291–92, ¶ 190(d), (k). Each

Plaintiff is a member of the *Keller* settlement class, which agreed to release "any and all past, present, and future claims . . . arising out of, involving, or relating to the alleged use of any" student-athlete NIL in NCAA-branded videogames. *Keller* Settlement ¶ 33.

    C.    <u>*O'Bannon* Forecloses Plaintiffs' Claims for Injunctive Relief.</u>

The final judgment in *O'Bannon* resolved injunctive relief claims on behalf of a certified class that covered, as relevant here, "all current and former student-athletes residing in the United States who compete on, or competed on, an . . . NCAA [FBS] . . . men's football team and whose [NIL] may be, or have been, included or could have been included . . . in game footage or in videogames licensed or sold by Defendants, their co-conspirators, or their licensees." *O'Bannon I*, 7 F. Supp. 3d at 965. That judgment—entered in a case challenging, among other things, continued commercial use of game footage and photos after a student-athlete's eligibility—bars relitigating the same issues here against the NCAA and Big Ten Conference.

Each plaintiff here was a member of the certified injunctive class in *O'Bannon*. Each competed on a men's DI FBS football team. Each alleges that Defendants appropriated his NIL by using game footage. And each played prior to November 8, 2013, when the district court certified the class.

"[A] judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Fed. Reserve Bank of Richmond*,

467 U.S. 867, 874 (1984) (citations omitted). That judgment "precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (citations omitted). The *O'Bannon* plaintiffs challenged rules and practices precluding compensation for the use of players' NIL in "(1) live game telecasts, (2) sports video games, and (3) game rebroadcasts, advertisements, and other archival footage." *O'Bannon II*, 802 F.3d at 1057. The Ninth Circuit conclusively resolved that challenge and delineated the additional compensation the antitrust laws required the NCAA to permit. *Id.* at 1075–76.

That is the precise injunctive relief claim that Plaintiffs seek to relitigate here. Their Amended Complaint essentially repeats allegations from the *O'Bannon* complaint. They complain that they receive no compensation for the use of archival footage and images from their playing days, Am. Compl., ECF No. 24, PageID.245–50, ¶¶ 62-70, and seek to enjoin Defendants "from relying on any unenforceable assignment of publicity rights," *id.*, PageID.275, ¶ 140—exactly the same "rules and practices," *id.* PageID.268, ¶ 120, challenged in *O'Bannon*. *See* 3d Consolidated Am. Class Action Compl., *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 4:09-cv-1967-CW (N.D. Cal. July 19, 2013), ECF No. 832, ¶¶ 373, 444–76, 599, 610, 613. Plaintiffs are therefore precluded from relitigating the *O'Bannon* injunction here. *Cooper*, 467 U.S. at 874; *see also Smith v. Bayer Corp.*, 564 U.S.

299, 315 (2011).[6]

## III.   PLAINTIFFS HAVE NOT PLAUSIBLY PLEADED INJURY.

Plaintiffs also do not plausibly allege the essential requirements of injury in fact and antitrust injury. Plaintiffs' theory is premised on the idea that Defendants engaged in an alleged conspiracy that interfered with their purported "publicity rights" in the display of copyrighted broadcast footage from the college games in which they played. But Plaintiffs have no such rights, which dooms their claims.

A.   <u>Plaintiffs Cannot Satisfy Their Burden to Plead Injury by Alleging the Deprivation of Non-Existent Rights.</u>

An antitrust plaintiff must plead and prove both constitutional standing (injury

---

[6] The *O'Bannon* judgment bars Plaintiffs' claims against the Big Ten Conference, Inc., even though it was not named as a defendant in *O'Bannon*, under the doctrines of res judicata and defensive nonmutual collateral estoppel. *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006). Res judicata bars claims against defendants that, like the Big Ten Conference, are in privity with a party in the prior suit. *See, e.g.*, *id.* The Big Ten Conference is a member of the NCAA, *see* Am. Compl., ECF No. 24, PageID.233, ¶ 7, which suffices to show a "sufficiently close relationship" between the two to justify claim preclusion. *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106, 1109 (6th Cir. 1981) (cleaned up); *see also Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1223–34 (2d Cir. 1977) (concluding privity existed between a representative association and one of its members for preclusion purposes). And "where collateral estoppel is invoked defensively, only the party against whom issue preclusion is applied must have been a party to the underlying action." *Scherer v. JP Morgan Chase & Co.*, 508 F. App'x 429, 435 (6th Cir. 2012). *Ga.-Pac. Consumer Prods. LP v. Four-U-Packaging, Inc*., 701 F.3d 1093, 1098 (6th Cir. 2012) ("Where a litigant brings repeated actions based upon the same operative facts, issue preclusion may still properly apply despite a change in legal theory or the cast of characters-defendants." (citation omitted)).

in fact) and antitrust standing, and the Sixth Circuit has already concluded that the type of allegations pleaded by Plaintiffs here fail to meet those requirements because they rest on the incorrect assumption that Plaintiffs have a legal right to broadcast footage of games in which they played. *See Marshall II*, 668 F. App'x at 156–57.

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). "Harm to the antitrust plaintiff is sufficient to satisfy" that requirement, but the Court must then "make a further determination whether the plaintiff is a proper party to bring a private antitrust action." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983) (citations omitted). To prove this separate requirement, a plaintiff must show "injury in fact to the plaintiff's business or property caused by the antitrust violation" that is "attributable to the anticompetitive aspect of the practice under scrutiny." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121–22 (2d Cir. 2007). Plaintiffs must adequately allege facts sufficient to support constitutional and antitrust standing. *See B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 265–66 (6th Cir. 2008).

Plaintiff cannot satisfy this burden by claiming that Defendants' alleged conspiracy deprived him of nonexistent legal rights. A federal district court dismissed similar antitrust claims after concluding that participants in a broadcast

19

"cannot have been injured by a purported conspiracy to deny them the ability to sell non-existing rights." *Marshall v. ESPN, Inc.*, 111 F. Supp. 3d 815, 835 (M.D. Tenn. 2015) (citation omitted) [hereinafter *Marshall I*]. The Sixth Circuit affirmed, concluding it had "little to add" to the district court's "notably sound and thorough opinion"; that "[t]o state the plaintiffs' theory in this case is nearly to refute it;" and that their antitrust claims were "meritless." *Marshall II*, 668 F. App'x at 156–57; *see also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977); *CBC Cos., Inc. v. Equifax, Inc.*, 561 F.3d 569, 572 (6th Cir. 2009). The same logic applies here. Plaintiffs claim they have not received compensation or royalties for the rebroadcast of games in which they played—an alleged violation of their purported "publicity rights"[7]—but those claims rest on the faulty assumption that Plaintiff has a co-ownership of, or rights of publicity in, copyrighted broadcast footage of games in which they played. They have neither.

B. <u>Plaintiffs Have No Copyright Interests in Game Footage.</u>

Plaintiffs have not alleged—and could not allege—any plausible basis for claiming co-ownership of copyrights in any broadcast footage of the NCAA games

---

[7] Plaintiffs assert 20 categories of incurred damages. Am. Compl., ECF No. 24, PageID290–96, ¶ 190. These allegations are conclusory and unsupported by other allegations in the Amended Complaint and should therefore be rejected. Regardless, each assertion of damages arises from Plaintiffs' deficiently pleaded antitrust and unjust enrichment claims.

in which they played. The copyright in a protected work "vests . . . in the author or authors of the work." 17 U.S.C. § 201(a). Live athletic events "are not 'authored' in any common sense of the word" because they are "competitive and have no underlying script." *NBA v. Motorola, Inc.*, 105 F.3d 841, 846–47 (2d Cir. 1997). Players' in-game performances thus are not "works of authorship" establishing ownership rights within the meaning of the Copyright Act. *Id.* at 846.

By contrast, *broadcasts* and *recordings* of sports events are copyrightable as audiovisual works that are fixed in a tangible medium of expression. *Motorola*, 105 F.3d at 847. The author of such works is the "person who translates [the underlying game] into a fixed, tangible expression"—the broadcast footage—that is "entitled to copyright protection." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989); *Motorola*, 105 F.3d at 847; *accord In re NFL's Sunday Ticket Litig.*, 933 F.3d 1136, 1154 (9th Cir. 2019). Here, those entities are the broadcasters, promoters, and/or producers—not Plaintiffs. And any claims premised on later uses of copyrighted footage are not viable antitrust claims, as a copyright holder's exercise of rights granted by the Copyright Act is not anticompetitive conduct. *See Washington v. NFL*, 880 F. Supp. 2d 1004, 1006–1008 (D. Minn. 2012).

C.   Plaintiffs Have No Cognizable Right of Publicity in Rebroadcasts of NCAA Game Footage.

Plaintiffs have pled no relevant right of publicity under Michigan's, or any other state's, law. Moreover, state law uniformly gives the promoter or producer of

a sporting event the exclusive right to license that event.[8] *See, e.g.*, *Wis. Interscholastic Athletic Ass'n v. Gannett Co.*, 658 F.3d 614, 624–28 (7th Cir. 2011); *Laumann v. NHL*, 907 F. Supp. 2d 465, 485 (S.D.N.Y. 2012); *S.W. Broad. Co. v. Oil Center Broad. Co.*, 210 S.W.2d 230, 232 (Tex. Civ. App. 1947); *Okla. Sports Props., Inc. v. Indep. Sch. Dist. No. 11*, 957 P.2d 137, 139 (Okla. Civ. App. 1998); *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 542 (1993).

The necessary corollary is that *participant*s have no right of publicity in a broadcast or rebroadcast of a sporting event. A right of publicity arises when a person's NIL is used to promote a product or service, not when that person simply appears in public or in a video taken in a public setting. *See Marshall I*, 111 F. Supp. 3d at 825–29; *see also Parks v. LaFace Records*, 329 F.3d 437, 459–60 (6th Cir. 2003). Thus, courts overwhelmingly agree that simply broadcasting or rebroadcasting all or portions of a sports event does not implicate players' purported publicity rights. *See, e.g.*, *Marshall II*, 668 F. App'x at 157; *Marshal I*, 111 F. Supp. 3d at 825–27; *Dryer v. NFL*, 55 F. Supp. 3d 1181, 1195–1200 (D. Minn. 2014), *aff'd*, 814 F.3d 938 (8th Cir. 2016); *NFL v. Alley*, 624 F. Supp. 6, 10 (S.D. Fla. 1983); *Gionfriddo v. MLB*, 94 Cal. App. 4th 400, 406–18 (Cal. Ct. App. 2001).

---

[8] For the "right of publicity" in the context of sporting event licenses, "[d]evelopment of this theory of law in the State of Michigan has not been substantial; therefore, the Court must look to other jurisdictions as persuasive authority." *Nichols v. Moore*, 334 F. Supp. 2d 944, 955 (E.D. Mich. 2004).

The only decision contrary to the vast weight of precedent of which Defendants are aware is *O'Bannon* district court's opinion (adhered to in a subsequent matter before the same judge) that there might be a right of publicity in a broadcast or that similar allegations by current student-athletes plausibly allege injury. *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-1967, 2014 WL 1410451, at *10–11 (N.D. Cal. 2014)*; In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 990 F. Supp. 2d 996, 1005–06 (N.D. Cal. 2013); *House v. NCAA*, 545 F. Supp. 3d 804, 816–17 (N.D. Cal. 2021). Both law and logic should lead the Court to follow the prevailing judicial consensus, not *O'Bannon*. If mere presence in a sports broadcast conferred a right of publicity, every person depicted in a sporting event—not only players, but coaches, cheerleaders, band members, referees, and even spectators—might try to assert such a right. That would make broadcasts next to impossible by giving each participant veto power over broadcasts.

### D. Any Right-of-Publicity-Based Claim Based on Later Use of Copyrighted Footage Would Be Preempted by the Copyright Act.

Even if Plaintiffs could identify some state-law publicity right, their claims would still fail because they would be preempted by the Copyright Act. The reasons why are straightforward. Broadcasts of sports events are copyrighted audio-visual works. *Motorola*, 105 F.3d at 847. The Copyright Act vests in the copyright owner the exclusive right to reproduce, distribute, display, and prepare derivative works of

the copyrighted game footage. 17 U.S.C. § 106. Thus, claims based on allegedly unauthorized use of a plaintiff's NIL are preempted absent allegations that such use was "separate from, or beyond, the rebroadcasting, in whole or in part, of the copyrightable material." *See Melendez v. Sirius XM Radio, Inc.*, 50 F. 4th 294, 297 (2d Cir. 2022); *see also In re Jackson*, 972 F.3d 25, 40 (2d Cir. 2020); *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1016 (9th Cir. 2017); *Dryer v. NFL*, 814 F.3d 938, 943 (8th Cir. 2016); *Ray v. ESPN, Inc.*, 783 F.3d 1140, 1144 (8th Cir. 2015); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 679 (7th Cir. 1986).

To avoid preemption, Plaintiffs would have to show that Defendants "manipulated or imitated" their identities or likenesses, *Melendez*, 50 F.4th at 306, or used their NIL "in a manner that implies [their] endorsement, sponsorship, or approval" of an entity, product, or opinion, *Jackson*, 972 F.3d at 48, that is "independent from the copyrighted work itself," *Melendez*, 50 F.4th at 306. *See also T3Media*, 853 F.3d at 1011; *Dryer*, 814 F.3d at 942–43; *Ray*, 783 F.3d at 1144. Plaintiffs do neither.

## IV. PLAINTIFFS' UNJUST ENRICHMENT CLAIM MUST BE DISMISSED.

Courts have held that a plaintiff cannot salvage a failed antitrust claim by simply recharacterizing it as an unjust enrichment claim. *See, e.g., Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402, 424 (E.D.N.Y. 2013). That principle applies

with particular force here because Plaintiffs' unjust enrichment claim faces the same obstacles on the merits. *First*, it would be time-barred under Michigan law, *see* supra Section I. *Second*, two Plaintiffs' claims would be barred by the *Alston* settlement's release of future damages claims, and all Plaintiffs' claims for damages related to videogames are barred by the *Keller* settlement, *see* supra Section II. *Finally*, any unjust enrichment claim would fail because it is premised on a failed right-of-publicity theory, *see*, *e.g., Ruffin-Steinback v. dePasse*, 267 F.3d 457, 462–63 (6th Cir. 2001); *Marshall I*, 111 F. Supp. 3d at 837, and is also preempted by the Copyright Act, which preempts state law claims that the defendant was unjustly enriched by use of a protected work of authorship, *see, e.g.*, *Ritchie v. Williams*, 395 F.3d 283, 289 (6th Cir. 2005); *Mertik Maxitrol GMBH & Co. KG v. Honeywell Techs. SARL*, No. 10-12257, 2012 WL 13008394, at *4 (E.D. Mich. July 24, 2012).

## CONCLUSION

The Amended Complaint should be dismissed in its entirety.

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2025, I electronically filed the foregoing

Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will

send notification of such filing to all parties and counsel of record.

Dated:  January 13, 2025

By: */s/ Rakesh Kilaru*
Rakesh Kilaru
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone:  (202) 847-4000
Facsimile: (202) 847-4005
rkilaru@wilkinsonstekloff.com

*Counsel for National Collegiate Athletic
Association*