UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DENARD ROBINSON, BRAYLON EDWARDS, MICHAEL MARTIN, and SHAWN CRABLE,** individually and on behalf of themselves and former University of Michigan football players similarly situated**,**<br><br>Plaintiffs,<br><br>vs.<br><br>**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION aka "NCAA", BIG TEN NETWORK aka "BTN", and THE BIG TEN CONFERENCE, INC.,**<br><br>Defendants. | **2:24-CV-12355-TGB-KGA**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e) (ECF NO. 60)** |

Plaintiffs Denard Robinson, Braylon Edwards, Michael Martin, and Shawn Crable, all former University of Michigan football players, brought this putative class action claiming alleged antitrust violations and unjust enrichment against the National Collegiate Athletic Association ("NCAA") and one of its member athletic conferences, The Big Ten Conference, Inc., as well as against Big Ten Network ("BTN"). Plaintiffs allege claims for monetary and injunctive relief arising from Defendants' use of the student-athletes' names, images, and likenesses ("NILs") in any videos posted or licensed by Defendants, including through broadcasts, archival footage, and promotional campaigns.

On September 26, 2025, the Court entered an order granting the Defendants' motions to dismiss and dismissed Plaintiffs' First Amended Complaint with prejudice. ECF No. 59. Plaintiffs now ask the Court to reconsider and reverse its decision in their Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e), ECF No. 60. The motion has been fully briefed, ECF Nos. 63, 64, and the Court entered a notice that it would decide the motion on the briefs, without a hearing, in accordance with E.D. Mich. L.R. 7.1(e). ECF No. 61. For the reasons stated below, Plaintiffs' motion will be **DENIED**.

## I. BACKGROUND

Plaintiffs Denard Robinson, Braylon Edwards, Michael Martin, and Shawn Crable are former student-athletes who played for the University of Michigan's Division I men's football team between 2001 and 2012. First Amended Complaint ("FAC") ¶¶ 1–4, ECF No. 24. They bring this purported class action against the National Collegiate Athletic Association ("NCAA"), The Big Ten Conference, Inc., and Big Ten Network ("BTN") (collectively, "Defendants"). *Id.* ¶¶ 6–8. Plaintiffs allege that Defendants conspired to violate the Sherman Act and were unjustly enriched through commercial use of Plaintiffs' names, images, and likenesses ("NILs").

Citing NCAA Bylaw 14.1.3.1, Plaintiffs allege that, for "decades," NCAA rules have required "student-athletes to sign forms that effectively transfer[red] their publicity rights to the NCAA" and the NCAA's

member institutions "with the threat of ineligibility for competition if they refuse to sign." *Id.* ¶¶ 22, 43, 54, 58, 112, 120. Plaintiffs "ground[]" their claims in the central allegation that the NCAA coerced student-athletes to sign a Student-Athlete Statement contract that purportedly "requir[ed] them to cede their rights to their [NIL]" and granted Defendants a "perpetual license" to "appropriate[e] those [publicity] rights without compensation" beyond the end of the student-athletes' collegiate careers. *Id.* ¶¶ 22, 24, 27, 37, 48, 54, 58, 80, 111. Plaintiffs contend that "[t]his practice ensures that the NCAA and its partners can exploit these right indefinitely." *Id.* ¶¶ 22, 152.

Plaintiffs assert claims for: (1) unreasonable restraint of trade, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; (2) unreasonable restraint of trade through group boycott or refusal to deal, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; (3) conspiracy to restrain trade, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; and (4) common law unjust enrichment. ECF No. 24. Plaintiffs also move to certify a class. ECF No. 29.

Defendants moved to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6), ECF Nos. 38, 40, and to transfer venue or in the alternative stay proceedings, ECF No. 39. On September 26, 2025, this Court entered an order granting Defendants' motions to dismiss, denying Defendants' motion to transfer venue, and denying as moot Plaintiffs' motion to certify class, and dismissed this case with prejudice. ECF No.

59. The Court found that Plaintiffs' claims are barred by the applicable statutes of limitations. *See id.*

Plaintiffs have now filed a Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e). ECF No. 60. Plaintiffs contend that the Court "misapplied" the standard under Rule 12(b)(6) by dismissing their claims based on statute of limitations grounds and that they adequately plead viable continuing antitrust violations and an unjust enrichment claim. Defendants filed a Response in opposition to Plaintiffs' motion, ECF No. 63, and Plaintiffs filed a Reply brief, ECF No. 64.

## II. LEGAL STANDARD

Motions for reconsideration of a Court's final ruling are governed by Federal Rule of Civil Procedure 59(e) or 60(b). Plaintiffs here move for reconsideration under Rule 59(e). Motions to alter or amend judgment pursuant to Rule 59(e) may be granted only if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). "Rule 59(e) permits a court to alter or amend a judgment, but it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2810.1 (2d ed. 1995)); *see also Michigan Flyer LLC v. Wayne Cnty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017) ("A motion under

Rule 59(e) is not an opportunity to re-argue a case.") (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)). "A motion to alter or reconsider a judgment is an extraordinary remedy and should be granted sparingly because of the interests in finality and conservation of scarce judicial resources." *In re J & M Salupo Dev. Co.*, 388 B.R. 795, 805 (B.A.P. 6th Cir. 2008) (quoting *American Textile Mfrs. Inst., Inc. v. The Limited Inc.*, 179 F.R.D. 541, 547 (S.D. Ohio 1998), *aff'd*, 190 F.3d 729 (6th Cir. 1999)).

## III. DISCUSSION

### A. The Court Properly Dismissed Plaintiffs' Antitrust Claims

Plaintiffs first argue that the Court clearly erred in granting Defendants' motions to dismiss their Sherman Act claims based on the statute of limitations. Plaintiffs contend that the Court is required to construe their FAC in the light most favorable to them, and that they had no obligation to plead in the avoidance of anticipated affirmative defenses, including the statute of limitations. According to Plaintiffs, they pled "a nuanced antitrust theory that did not focus exclusively on the NCAA's mandatory student statement forms" and thus did not affirmatively plead themselves out of court. ECF No. 60, PageID.868–73. They further argue that this Court clearly erred in concluding that Plaintiffs failed to plead viable continuing antitrust violations. *Id.* PageID.873–78.

Plaintiffs thus proceed under the "clear error" prong of Rule 59(e). "The term 'clear error' is not well-defined in the Sixth Circuit, but it does 'clearly indicate[ ] that a high standard applies.'" *Forman v. Meridian Bioscience, Inc.*, 387 F. Supp. 3d 791, 796 (S.D. Ohio 2019) (quoting *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 809 (N.D. Ohio 2010)). "A party moving to alter or amend a judgment based on a clear error of law must show that the Court wholesale disregarded, misapplied, or failed to recognize controlling precedent." *Hall-Easley v. Clarksville Operating Grp. LLC*, No. 3:23-cv-00107, 2026 WL 1021838, at *1 (M.D. Tenn. Apr. 15, 2026) (citing *Lonardo*, 706 F. Supp. 2d at 809). Plaintiffs fail to meet that high standard here.

First, although it is true that a motion to dismiss "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations," the allegations in the complaint may "affirmatively show" that the claim is time-barred. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); *see also Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021) (noting that the validity of an affirmative defense, including a statute of limitations defense, may be "apparent from the face of the complaint, rendering a motion to dismiss appropriate."). "When that is the case, … dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo*, 676 F.3d at 542. That is the situation presented here.

Sherman antitrust claims are subject to a four-year statute of limitations. 15 U.S.C. §15b. "A cause of action accrues and the limitations

period commences each time a defendant commits an act which injures the plaintiff's business." *Peck v. Gen. Motors Corp.*, 894 F.2d 844, 848 (6th Cir. 1990) (quoting *Zenith Radio Corp. v. Hazeltime Rsch., Inc.*, 401 U.S. 321, 338 (1971)). As the Court found in its Order granting Defendants' motions to dismiss the FAC, Plaintiffs allege that they were student-athletes at the University of Michigan from 2001 to 2012. Accordingly, the act that caused their claimed injury—Defendants' requirement that the Plaintiffs give up control over their publicity rights, including their NIL—occurred at the latest in 2012, when the last Plaintiff would have signed a Student-Athlete Statement ceding those rights to the NCAA. ECF No. 59, PageID.846.

Plaintiffs contend in their motion that they allege "a nuanced antitrust theory" not limited "exclusively on the NCAA's mandatory student statement forms," but "aimed more generally at the NCAA's anti-competitive bylaws, Defendants' conspiracy to use those bylaws to monetize their NIL, and actions taken to further the goals of the conspiracy." ECF No. 60, PageID.868–69, 871. That is essentially the same argument they made in response to Defendants' motions to dismiss where they contend that Plaintiffs continue to experience the adverse impact of Defendants' alleged "anticompetitive NCAA rules, bylaws, practices, and agreements whereby Defendants have … decreased the compensation (and taken it for themselves) for Plaintiffs' NIL from college to the present." *See* ECF No. 42, PageID.557.

However, as the Court found in is September 2025 Order and it finds again today, it is apparent from the face of Plaintiffs' FAC that Plaintiffs repeatedly and consistently allege that their claimed antitrust and unjust enrichment injuries stemmed from, or are "grounded" on, their allegations that the NCAA "mandate[d]" or "coerc[ed]" student-athletes like Plaintiffs "to sign forms that effectively transfer[red]" or "cede[d]" their "names, images, and likenesses" and "publicity rights" to the NCAA and the NCAA then "appropriate[ed] those rights without compensation" "in perpetuity" with the aim of "generating substantial profits for the NCAA and its partners at the expense of the athletes' rights and potential earnings." *See, e.g.,* FAC ¶¶ 22, 24, 27 43, 48, 50, 54, 58, 63, 70, 80, 85, 95.c, 106, 111–12, 124, 139–40, 148–49, 151–53, 164, 174–75. Plaintiffs allege that Defendants imposed "a regime of restrictive agreements that artificially fixed the value of Plaintiffs' NIL at zero, resulting in profound economic harm," and deprived Plaintiffs "of substantial profits they would have otherwise earned from their publicity rights." *See id.* ¶¶ 47, 55, 107, 123–24, 173; *see also id.* ¶ 136 ("A genuine case or controversy exists between Plaintiffs and Defendants regarding the legality of the NCAA's requirement that student-athletes assign their publicity rights to the NCAA without compensation.").

Plaintiffs' antitrust claims therefore accrued, at the latest, in 2012, when the last Plaintiff could have assigned his publicity rights to the NCAA, making their initiation of this lawsuit twelve years later, on

September 10, 2024, grossly untimely. Plaintiffs fail to explain how the NCAA's alleged "evolving and periodically-revised rules and practices" and bylaws regarding the execution of student-athlete statements "generally" somehow restart the limitations period *with respect to Plaintiffs' claims* in this case.

Similarly, Plaintiffs' argument that Defendants' alleged monetization of Plaintiffs' NIL and media rights deals after 2012 renders their antitrust claims timely also fails. As discussed more specifically next with respect to Plaintiffs' continuing violations arguments, all other courts to have considered this issue have found that "continued commercial usage of [] NIL rights is a 'manifestation' of Defendants' past conduct, not a new an independent act that restarts the statute of limitations." *See Pryor v. NCAA*, No. 24-cv-4019, 2025 WL 2022123, at *7 (S.D. Ohio July 18, 2025) (citations omitted); *Chalmers v. NCAA*, No. 24 Civ. 5008, 2025 WL 1225168, at *10 (S.D.N.Y. Apr. 28, 2025) ("[T]he commercial usage of [plaintiffs'] NIL was merely a manifestation of these long-ago agreements, entered into while plaintiffs were in college."), *aff'd*, No. 25-1307-sc, 2025 WL 3628416 (2d Cir. Dec. 15, 2025) (Summary Order); *Members of N. Carolina State Univ.'s 1983 NCAA Men's Basketball Nat'l Championship Team v. NCAA*, No. 24CV017715-910, 2025 WL 2256311, at *10 (N.C. Super. Ct. Aug 6, 2025) ("[B]y Plaintiffs' own allegations, *that* relinquishment—through the signing of the SAS—was the discrete act forming the basis for any injuries, they proceeded to

suffer over the coming decades."). Just as the district court found when considering similar claims in *Chalmers*, the FAC in this case "does not allege that any agreement between a plaintiff and defendants to surrender plaintiff's NIL rights occurred within, or anywhere close to, the four-year period before the filing of this lawsuit. Their claims are thus time-barred." *See Chalmers*, 2025 WL 1225168, at *10. Plaintiffs therefore fail to show "clear error" in the Court's finding that Plaintiffs' antitrust claims are barred by the applicable four-year statute of limitations.

Plaintiffs' arguments regarding the continuing violations theory also fail to support reconsideration of the Court's Order for clear error. In a thorough and detailed discussion in its September 2025 Order dismissing this case, the Court previously explained why Plaintiffs' time-barred antitrust claims are not saved by the continuing violations theory. ECF No. 59, PageID.843–49. The Court explained that even assuming Defendants' requirement that Plaintiffs sign the Student-Athlete Statement each academic year before their athletic season begins, transferring their NIL rights to Defendants, violates the Sherman Act, that act occurred, at the latest in 2012, and Defendants' alleged continued commercial use of Plaintiffs' NIL rights after 2012 is a "manifestation" or "reaffirmation" of Defendants' past conduct, not a new and independent act that restarts the statute of limitations. *Id.* The Order cited to other courts that have considered these same arguments

and concluded that the continuing violations theory did not save the plaintiffs' antitrust claims and that those claims were barred by the statute of limitations. *Id.* PageID.847–49 (citing *Chalmers*, 2025 WL 1225168, at *9, and *Pryor*, 2025 WL 1011123, at *7). The Court found that "the analyses and reasoning of the *Chalmers* and *Pryor* courts, while not controlling, are nevertheless compelling and applicable to Plaintiffs' claims here." *Id.*

Since this Court's decision, the Second Circuit Court of Appeals has affirmed the district court's decision in *Chalmers* and again found that "the anticompetitive conduct that gives rise to the Sherman Act claims" is "the transfer from plaintiffs to defendants of all rights to their NIL, and to any and all profits therefrom." *Chalmers*, 2025 WL 3628416, at *4. That court went on to find, as this Court did and as the other courts who have decided these issues, that "[e]ach commercial use of plaintiffs' NIL—including the entry into commercial licensing agreements and discrete acts of advertising—is 'a manifestation of the "overt act," the decision to enter the contract, rather than an independent overt act on its own.'" *Id.*(citations omitted).

Plaintiffs have failed to identify or cite to any decision by any court considering this question under similar facts that reached a contrary conclusion, and Plaintiffs' bare assertions that *Chalmers* and *Pryor* are "fundamentally different" and therefore "neither 'compelling' nor 'applicable,'" ECF No. 60, PageID.878, are wholly insufficient to support

reconsideration of the Court's decision under the clear error prong of Rule 59(e). As the Seventh Circuit has vividly observed, "[t]o be clearly erroneous, a decision must strike [a court] as more than just maybe or probably wrong; it must … strike [the court] as wrong with the force of a five-week old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988). Plaintiffs here generally re-argue that the cases they cited previously in their Response to the motions to dismiss, and already considered by this Court, along with some newly cited cases, support reconsideration of the Court's Order. ECF No. 60, PageID.873–77. But a motion under Fed. R. Civ. P. 59(e) "is not an opportunity to re-argue a case," *Michigan Flyer*, 860 F.3d at 431, or to "raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping*, 554 U.S. at 485 n.5. And a "mere disagreement" with a court's initial decision will not support a Rule 59(e) motion. *Penley v. NPC Int'l, Inc.*, No. 13-1031, 2014 WL 12634410, at *2 (W.D. Tenn. Dec. 3, 2014), *aff'd sub nom. Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261 (6th Cir. 2015) (citing *Slate v. Am. Broad. Cos.*, 12 F. Supp. 3d 30, 35 (D.D.C. 2013)). Yet that is essentially what Plaintiffs attempt to do here.

The Court concludes that it did not commit a clear error of law in reaching its decision to dismiss Plaintiffs' antitrust claims this case. Plaintiffs' Sherman Act claims are barred by the statute of limitations,

and are not saved by the continuing violations theory. Plaintiffs' motion to reconsider this decision will be **DENIED**.

### B. The Court Properly Dismissed Plaintiffs' Unjust Enrichment Claim

Plaintiffs also argue that the Court should reconsider its decision dismissing Plaintiffs' unjust enrichment claim against Defendants. ECF No. 60, PageID.878–80. In its September 2025 Order, the Court found that, "[l]ike Plaintiffs' Sherman Act claims, their unjust enrichment claim is time-barred and not saved by the continuing violations doctrine or equitable tolling." ECF No. 59, PageID.854–57. The Court explained that the statute of limitations on Plaintiffs' unjust enrichment claims would be at most six years, and that Plaintiffs' unjust enrichment claim accrued when they "conferred the benefit (control over their NIL) to Defendants, which at the latest happened in 2012" when Plaintiffs last signed the student-athlete statements, well more than six years before Plaintiffs filed this lawsuit. *Id.* (citing FAC ¶¶ 180–83, ECF No. 24).

Turning to Plaintiffs' unjust enrichment claim in their FAC, they expressly plead that they "have conferred a benefit upon Defendants by allowing them to use their names, images, and likenesses to generate revenue" and that "Defendants have knowingly and willingly accepted and retained this benefit[.]" FAC ¶¶ 181–82, ECF No. 24. And Plaintiffs plead that this allowance occurred when they signed the student-athlete

statements, at the latest in 2012, well outside the six-year limitations period applicable to unjust enrichment claims in Michigan.

In their Rule 59(e) motion, Plaintiffs attempt to distinguish their alleged grant of a benefit to Defendants (control of their NIL to Defendants in 2012 or earlier) and Defendants' alleged commercial use of and profit from the NILs many years later, but fail to explain how that is separately actionable. An unjust enrichment claim accrues under Michigan law "at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL § 600.5827. "The 'continual ill effects' [Plaintiffs complain of] resulted from [the original alleged violation], not from Defendants' later conduct." *Pryor*, 2025 WL 2022123, at *9 (dismissing plaintiffs' unjust enrichment claim under Ohio law). But for Plaintiffs' grant of their NIL to Defendants at the time they signed the Student Athlete Statements, Defendants would not have been able to use the students' NIL at a later time. And, as the Court stated in its prior Order, Plaintiffs' reliance on the continuing wrong doctrine to extend the statute of limitations for their unjust enrichment claim is of no avail where the doctrine is no longer recognized in Michigan. *See Marilyn Froling Revocable Tr. v. Bloomfield Hills Country Club*, 769 N.W.2d 234, 249 (Mich. Ct. App. 2009) ("[T]he nature of the continuing wrongs doctrine, in direct conflict with the statute of limitations and the accrual statute, defies any reliance on its operation.").

The Court therefore properly accepted Plaintiffs' allegations as true and found that Plaintiffs' unjust enrichment claims are barred by the statute of limitations. Plaintiffs' Rule 59(e) motion to reconsider the Court's ruling dismissing their unjust enrichment claims will be **DENIED**.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) is **DENIED.**

**IT IS SO ORDERED.**

Dated: September 30, 2026 /s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE